## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1898.

106   1
d111 486

---

### FIREMAN'S FUND INSURANCE COMPANY *v.* PEKOR.
### SUN MUTUAL INSURANCE COMPANY *v.* PEKOR.

1. It is not essential to the validity of a policy of fire-insurance, issued in renewal of one previously taken out by the insured, that he should pay in cash the renewal premium, provided the agent of the company, with its express or implied assent, himself pays or undertakes to become responsible to it for such premium, in order that credit may be extended to the insured. Nor, under such circumstances, is it necessary that there should be manual delivery of the policy to the insured before a loss by fire occurs, where the policy has actually been issued by the company and is simply retained by the agent for his individual protection until reimbursed by the insured.

2. A stipulation in such a policy to the effect that should the insured fail to comply with a covenant on his part to "at all times maintain a total insurance upon the°property insured . . of not less than 75 per cent. of the total cash value thereof," he shall be deemed to be "a coinsurer to the extent of the deficiency, and in that event shall bear his . . proportion of any loss occurring under this policy," is not in contravention of section 2110 of the Civil Code, which provides that "all insurance companies shall pay the full amount of loss sustained upon the property insured by them, provided said amount of loss does not exceed the amount of insurance expressed in the policy," and which declares that "all stipulations in such policies to the contrary shall be null and void."

Argued October 20, — Decided November 19, 1898.

Actions on insurance policies. Before Judge Butt. Muscogee superior court. May term, 1898.

On August 11, 1897, C. F. Pekor brought suit against the Fireman's Fund Insurance Company, alleging, in substance, that on December 10, 1896, he directed the defendant's agent, the John Blackmar Company, to renew for a term of one year, and to the extent of $3,000, a fire-insurance policy for $4,000, expiring on that day, which had been issued by the defendant to Bowles, sheriff, and transferred by him to the plaintiff, and which covered a certain stock of merchandise, consisting of jewelry, crockery, etc., levied upon as the property of V. J. Pekor; and that the John Blackmar Company, as agent for the defendant, thereupon issued a renewal of the policy in said reduced amount. At the time of the renewal, said agent did not request of the plaintiff the payment of the premium, but it was agreed between them, according to the course of dealing between the John Blackmar Company and its customers, that the premium would be paid by the insured when so requested. The policy was issued and so reported, and, so far as the defendant is concerned, the premium was paid by being charged to its agent, and such premium represented simply an indebtedness due the John Blackmar Company by the plaintiff, payable on demand. Pending the payment of the premium, the John Blackmar Company, with the consent of the plaintiff, retained the policy, and at no time requested of plaintiff the payment of the premium, prior to a fire, which occurred during the term of the policy, on January 18, 1897, and by which the property insured was damaged in such a manner and under such circumstances as to come within the stipulations and undertakings of the defendant in the policy, and to render the defendant liable to indemnify the plaintiff in the sum of $3,000, the direct damage to the plaintiff from the fire amounting to $12,250.53. Shortly after the fire, the plaintiff tendered to the John Blackmar Company the amount of the premium, and demanded delivery of the policy; but this demand was refused, the John Blackmar Company claiming that its refusal to deliver the policy, which it admitted was then in its possession, was by instruction of the defendant, which instruction was given after the loss by the fire had occurred and had been reported to the defendant. The John Blackmar Company held the

policy as plaintiff's agent, and not as the agent of the defendant, and as between the plaintiff and the defendant the premium had been duly paid. Plaintiff hereby tenders to the John Blackmar Company the amount of the premium, with interest from the date of the issuance of the policy to the time delivery of the same was demanded. For the reasons stated, the plaintiff is unable to attach hereto a literal copy of the policy, but attaches as an exhibit a copy which is substantially correct as to its written portions, and literally correct as to the terms upon which the policy was issued. Notice of the loss and damage was immediately given to the defendant; and within the time limited in the policy plaintiff furnished to defendant proofs of loss, setting forth the amount of insurance carried by him, the value of the stock of merchandise, the amount of such stock totally destroyed, the sound value found in the storehouse after the fire, together with the loss and damage thereto by virtue of the fire, which proofs were accepted by defendant, and no other or additional proofs requested, although plaintiff notified defendant, at the time the proofs were furnished, that if such were necessary, he would furnish the same upon request of defendant. Plaintiff has complied with all the provisions and stipulations of the policy to be complied with on his part. The defendant has refused to pay him the loss and damage of $3,000, or any part of it, and such refusal is in bad faith, etc.

A general demurrer to the petition was overruled. The defendant admitted that the plaintiff had directed the renewal of the first policy, as alleged, but denied that a renewal was issued; and averred that it was not renewed because the premium was not paid, and that, according to the terms of the contract of insurance, no agent was authorized to renew any policy without the premium being paid. Also, that under the policy sued on, the plaintiff became a coinsurer with the defendant, and agreed to keep insurance upon the property to an amount not less than seventy-five per cent. of the actual cash value of the property, and failing so to do, he became an insurer to the extent of the deficit, and should bear his proportion of any loss; and he failed to keep the property insured in an amount seventy-five per cent. of its cash value, to the damage of the defendant $3,000, which the defendant asks to recoup.

The trial resulted in a verdict for the plaintiff for $2,426.08, less $70.50 premium, with interest from April 24, 1897. A motion for new trial was overruled, and defendant excepted. Among the grounds of the motion were, that the court erred in giving in charge to the jury the following: (*a*) "It is insisted further, upon the part of the defendant, that there was a certain clause stipulated in the policy, by which Mr. Pekor was to become a coinsurer, provided he did not insure to the full extent of seventy-five per cent. of the property he had on hand at the time he took out this policy, and under that clause in the policy he became a coinsurer to the extent of the amount he failed to insure on this stock, up to the amount of seventy-five per cent. of the total value of the stock. [Civil Code, §§ 2109, 2110, read.] It is contended upon the part of the defendant in this case, that Mr. Pekor, who was the assured, under and by virtue of this clause in this contract, become a coinsurer with them to the amount of seventy-five per cent. of the full value of the stock he had on hand at the time. Under the law which I have just read to you, if this was done for the purpose of limiting the liability of the insurance company, then I charge you that it would be null and void, and that is a question of fact for you to determine in this case." (*b*) "It is insisted by the defendant, that this policy was never delivered, and this premium was not paid thereon. If Mr. Pekor made application for this policy, and he failed or refused to pay the premium, they were not bound to deliver him this policy; but it is insisted upon the part of the plaintiff, that while this premium was not paid at the time by Mr. Pekor himself, yet by an arrangement with the John Blackmar Company it was paid to the company, and there was an arrangement with the John Blackmar Company and himself, by which he was to pay the premium whenever called upon so to do. If that is true, if you should find from the testimony that the John Blackmar Company paid this premium to the company, and that there was an agreement existing between Mr. Pekor and the John Blackmar Company at the time, that he should have further time in which to pay this amount whenever called upon so to do, and if they failed to call upon him, and this property was consumed by fire, the company

would be responsible for whatever damage he may have sustained by reason of the loss." (c) "The actual delivery of the policy is not essential to this contract. If there was an agreement between the John Blackmar Company and Mr. Pekor that he was to have the insurance upon his stock of goods in this company for the sum of $3,000, and it was then and there agreed between the agent, the John Blackmar Company, and Mr. Pekor, that he was to pay the same whenever called upon, and the John Blackmar Company failed to call upon him before this loss was sustained by reason of a fire, the court charges you that the actual delivery of the policy is not essentially necessary to carry out this contract; because whenever two parties make an agreement to do a certain thing, and one of the parties acts upon that agreement, either to his loss or benefit, then the other party is bound by that contract. Hence, if the John Blackmar Company led him to believe that he was insured on this occasion, they agreed upon their part to wait, give him further time in which to pay this premium, and they failed to call upon him to pay it, and this fire occurred, then it is binding upon the company." (d) "On the other hand, if you do not believe that this premium was paid, and that there was no such arrangement made between Mr. Pekor and the John Blackmar Company, but that he simply made application for this policy of insurance, and failed to pay the premium, then the company would not be liable. But upon the other hand, if he did make this arrangement (and that you are to determine from the testimony in this case), although the policy was not delivered, the actual manual delivery of the policy not being necessary, I charge you they would be liable, provided Mr. Blackmar having agreed to extend him time and he failed to call on him. But if he did call upon him and he failed to pay the premium, he would not be entitled to recover. But I have stated to you before, if this arrangement was made by which he was to have time, in addition to the fact whether or not the John Blackmar Company actually paid the premium to the company themselves, then it would be a question between Mr. Pekor and Mr. Blackmar, if that is true." (e) "If the John Blackmar Company was authorized by this company, in the transaction of

their business, to extend time, to extend credit to its customers who applied for insurance, it would make no difference under and by virtue of that custom to grant this time to Mr. Pekor, the plaintiff in this case, and I charge you that the company would be liable. How this is it is for you to determine from the testimony in this case. In other words, you may look to the fact as to what was the custom of this company, this insurance company, together with other insurance companies, as to whether or not they permitted their agents to insure property for them and to examine risks, write policies and make contracts, and whether or not they were permitted to extend time, make that kind of contracts by which time was extended, credit was extended to the applicant for a policy, and although the John Blackmar Company may not have paid it, even if he had paid it and the company charged it back, the company would nevertheless be liable." (*f*) "The defendant contends that, if it is liable, its liability would be modified or limited by a stipulation in the policy known as the seventy-five per cent. coinsurance clause. The defendant contends that under the operation of this clause it was the duty of the plaintiff to carry insurance to the extent of seventy-five per cent. of the cash value of the property, and failing to do so, he would be liable as a coinsurer to the extent of the deficiency, that is, the difference between the amount of insurance actually carried and the seventy-five per cent. of the cash value of the property. Under the law of this State, insurance companies are required to pay the full amount of loss sustained upon the property insured by them, provided such loss does not exceed the amount expressed in the policy, and all stipulations in the policy to the contrary shall be null and void. If the application of the seventy-five per cent. coinsurance clause would have the effect of enabling the defendant to escape payment of the full amount expressed in its policy, it being conceded that the total loss and damage sustained exceeded such amount, then in that event such a stipulation would be in contravention of the statute and null and void. The plain purpose of the statute is to require all insurance companies to pay the full amount of the loss sustained, provided that the liability of the company shall in no case ex-

ceed the amount expressed in the policy." (*g*) "Evidence having been adduced in this case tending to illustrate the practical operation of the coinsurance clause, the court will leave to the jury the determination of the question whether the application of the clause in this case would limit the liability of the defendant to an amount less than that expressed in the policy, and less than the loss sustained. If you find that it would so limit the liability of the defendant, then the court charges you that the stipulation is illegal and inoperative." (*h*) "If no such agreement was made between the John Blackmar Company and Mr. Pekor to grant him further time, and he failed to pay the premium, then the company would not be liable in this case, and therefore would not be bound. But if such an agreement was had, you should find that the plaintiff is entitled to recover, then the company would be liable under the law of this case."

There were also assignments of error upon refusals of the court to charge, as requested, to the contrary of the foregoing propositions. For the other facts see the opinion.

*C. J. Thornton*, for plaintiffs in error.
*W. A. Wimbish* and *E. D. Burts*, contra.

FISH, J. By agreement between counsel, these two cases were consolidated and argued together before this court, as the controlling question presented for decision is common to both. Aside from this question, we find it necessary to deal specially with one only of the various points raised by the plaintiffs in error, none of the others being of sufficient merit or importance to require notice. Before undertaking to discuss the main issue involved, we shall direct our attention to the minor question last referred to, which is made in but one of the cases now before us.

1. It was strenuously insisted by counsel for the insurance company, that, under the circumstances detailed in the plaintiff's petition, no valid and binding policy had been issued to him by the Fireman's Fund Insurance Company, for the reason that its agent had no authority to extend credit to the plaintiff, and up to the time the loss by fire occurred he had paid no portion of the premium, which was the sole consideration moving to the company under the contract sought to be enforced.

In this connection, exception is taken to the overruling of a general demurrer to the plaintiff's petition, and error is assigned upon various portions of the charge of the court bearing upon this issue. In point of fact, the plaintiff's petition alleged, certainly with sufficient clearness to withstand a general demurrer, an arrangement with a general agent of the company, the effect of which was to create a contract in all essential respects alike to that indicated in the first headnote. No new question is therefore presented for determination; for the contention above outlined is effectually disposed of by the decision of this court in the case of *Mechanics & Traders Insurance Co.* v. *Mutual Real Estate & Building Ass'n,* 98 *Ga.* 262, the facts of which were similar to those appearing in the case at bar. We need only add, therefore, that the law as there laid down was correctly announced in the instructions given by the court of which complaint is now made.

2. It appears that each of the instruments upon which suit was brought contained the following recital and stipulation: "It is a part of the consideration of this policy, and the basis upon which the rate of premium is fixed, that the assured shall at all times maintain a total insurance upon the property insured by this policy of not less than 75 per cent. of the total cash value thereof, as covered under the several items of this policy, and that failing to do so, the assured shall become a coinsurer to the extent of the deficiency, and in that event shall bear his or her or their proportion of any loss occurring under this policy." The question presented for decision is, whether or not this stipulation is properly to be regarded as repugnant to the act of November 23, 1895, now embodied in section 2110 of the Civil Code, the material provisions of which are quoted in the second headnote. In the argument here, counsel for the plaintiffs in error undertook to explain that the purpose of this act was to declare invalid a stipulation which had previously been inserted in fire-insurance policies, to the effect that, irrespective of the amount named in the policy as the extent to which the holder was ostensibly insured, no recovery should be had thereunder for a sum greater than three fourths of the sound value of the property destroyed. We can not,

however, take judicial cognizance of what stipulations it was customary to incorporate in such policies prior to the passage of the act of 1895, in order that we may thus be able to arrive at the real or supposed evil at which the statute was aimed. Disregarding, therefore, the contention above stated, we conclude, from an examination of the terms of the act itself, read in the light of the law then obtaining, that its purpose was to declare void every stipulation whatsoever the practical operation of which would be to defeat a recovery for the full loss sustained, provided the same was not in excess of the amount named in the face of the policy, and provided, further, that the insurer had undertaken to assume alone the entire risk incident to an insurance against fire of the property destroyed. We add the latter proviso, although it is not to be found in the act under discussion, for the following reasons: Section 2109 of the Civil Code provides: "The assured may recover the full amount of his loss, provided, the same is within the amount insured. If he has several policies on the same property, the recovery from each company will be pro rata as to the amount insured." The provisions of this section were of force when the act of 1895 was passed. (Code of 1882, § 2814.) Not having been thereby repealed, expressly or by necessary implication, they occupy their present position in our new code, and are therefore to be considered in connection with section 2110, which sets forth in substance the terms of that act. Construing this latter section together with the one which precedes it, the conclusion is irresistible that there was no intention on the part of the legislature to declare that notwithstanding there were several policies covering the same property, the assured could nevertheless, in the event of its total or partial destruction, recover from each company the face value of the policy issued by it, if the damage by fire suffered was equal thereto, regardless of the question whether the aggregate amount recovered from all the companies was or was not out of all proportion to the amount which would indemnify the assured against the loss sustained by him.

It has long been the settled policy of this State that wagering contracts are not to be tolerated. Section 3668 of the Civil Code, the provisions of which have been of force for over a quar-

ter of a century, declares unequivocally that all such contracts shall be void. As was held by a majority of this court in *Exchange Bank of Macon* v. *Loh*, 104 *Ga.* 446, the object of all legitimate insurance is to secure indemnity only, and a policy of life-insurance which contemplates anything beyond indemnity is a mere wager. Beyond all doubt, "to indemnify the assured against loss," not to arbitrarily pay him the face value of the policy in the event of damage by fire to the property insured, is essentially the only office a policy of fire-insurance can legally perform. Civil Code, § 2089. Accordingly, it is apparent that we are not at liberty to assume that the General Assembly intended that the act of 1895 should be given a construction which would result, in the case of coinsurance on the property insured, in a recovery against each company of the full amount of its policy, where the damage by fire suffered was in excess thereof, but far below the aggregate amount of the face value of all the policies held by the assured. On the contrary, we are constrained to hold that the act in question was intended to be read in connection with the provisions of section 2109, as we have accordingly done. That this section does not stand repealed is evidenced by the fact that the legislature, in adopting our present code, allowed it to take a place therein and to be immediately followed by the provisions of the act of 1895, under one general head devoted to a codification of the various existing laws relating to "fire-insurance contracts." Surely, where several companies together carry a common risk, each in a proportion established by the face of its policy as compared with the total amount of the insurance effected, no greater sum than its pro rata share of the loss sustained can be recovered by the assured from any one of such companies. Indeed, no recovery at all can be had from a given company, unless necessary to indemnify the assured; so, if he has effected insurance with seven companies, for instance, and six of them discharge in full his just claim, the liability of the seventh company will be to its coinsurers, not to the assured himself. *Williamsburg City Fire-Insurance Company* v. *Guinn*, 88 *Ga.* 65.

Coinsurance being, then, expressly recognized by our code as entirely legitimate and proper, it is pertinent to inquire into

the nature of the contract by which the same may be effected. The doctrine as to contribution between coinsurers is based upon the ground that " where several policies in different offices insure the same party upon the same subject-matter against the same risk, as there can be but one loss and one indemnity, the several offices, as between themselves, must contribute proportionably to the loss, though each is liable to the insured for the entire loss, unless there is a special agreement that each shall be liable only for its proportional part. The several insurers are regarded as if they were one, each standing as a cosurety with the other, according to the amount which he undertakes, just as if all had underwritten the same policy. To avoid circuity of action, the pro rata limitation was introduced." 2 May on Insurance, § 434. In this State, it is unnecessary for a coinsurer to stipulate with the assured against liability for the entire loss; for it is expressly provided by law that in the event the latter "has several policies on the same property, the recovery from each company will be pro rata as to the amount insured." Civil Code, § 2109. Reduced to its legitimate analysis, the contract between the assured and the coinsurers appears to be as follows: No one of the latter assumes the entire risk, and consequently he can in no event be called upon to pay the entire loss. They combine to carry the whole risk and to assume responsibility for any indemnity which may justly be demanded. Each bears only such a proportion of the risk as he contracts to undertake, and his pro rata of the indemnity to which the assured is entitled in case of loss should be measured accordingly. For instance, suppose the owner of property worth $20,000 desired to place thereon insurance to the amount of $15,000; and while no one of three companies was willing to assume the whole risk, each readily agreed to share an equal proportion thereof, and thus become responsible for one third of any loss which might occur not in excess of the total amount of the insurance issued in accordance with such an arrangement. Clearly, in such a case, it could not be said that the contract was in its essence vicious, or violative of the policy of the law as declared by the act of 1895, which apparently seeks to hold an insurer liable to the extent of the face of the policy,

where the loss incurred is equal to or exceeds the amount therein stated, whenever he undertakes to assume alone the entire risk and exacts premiums upon that basis. Again, suppose a company, declining to assume the entire risk, agreed to undertake the liability of a coinsurer to the extent of one third of the risk, with the express understanding that if the assured failed to comply with an undertaking on his part to procure other companies willing to assume the remaining two thirds of the risk, he himself should be considered as carrying that proportion of the same, and in no event should the company's liability exceed its just pro rata of the losses, to wit: one third thereof, a proportion exactly corresponding with the measure of risk the company was paid to assume. Such a contract would seem to be far from iniquitous. If a perfected arrangement for coinsurance is beyond reproach, why may not parties legitimately contract with a view to bringing about an arrangement of this kind, and stipulate that the insurance issued shall be upon that basis instead of upon the plan upon which single policies are ordinarily issued? We understand the stipulation contained in the policies now under consideration to have no other object than to evidence an agreement between insurer and assured that the former should occupy the position of a coinsurer, undertaking to assume only a fractional part of the risk, and therefore liable for no greater proportion of any loss which might occur.

It is urged by counsel for the defendant in error that this stipulation is intended to operate as an evasion of the law, and is a mere subterfuge to which insurance companies have resorted. If the requirement imposed upon the assured of keeping up additional insurance to a given amount were one with which it would be impossible or extremely difficult for him to comply, there would be a great deal of force in the suggestion of counsel. But we do not understand that it is at all impracticable or difficult for the owner of property which is a fair risk to obtain insurance "of not less than 75 per cent. of the total cash value thereof." At any rate, we are not judicially informed that such a requirement may not readily be met, and are not, therefore, in a position to say it is obviously so unrea-

sonable as to indicate a purpose on the part of the insurer to place the assured in a situation where he can not comply with his obligations, in order that non-fulfilment thereof may be urged as a reason why the amount of recovery under the policy should be reduced below the sum therein specified as the limit of liability. Had the assured in the present case complied with his covenant to carry a total insurance of 75 per cent. of the value of the property insured, clearly he could claim of the insurance companies who issued policies on this express understanding and condition only their pro rata of the loss sustained. He offers no excuse whatever for his failure to comply with his solemn agreement. To allow him to profit by his breach of covenant would be to permit him to take advantage of his own wrong. He appears in this court, not as one who can lay any claim to having conscientiously tried to comply with his legal and moral obligations under a contract to which he voluntarily assented, but in the attitude of one who seeks to evade and override his agreement upon the ground that the policy of the law prohibited his entering into the same, and accordingly he is not in strict law bound thereby. This inclines us without reluctance to administer the law, as we find it, in its strict, technical sense. The act of 1895, being in restraint of the common-law right of freedom to contract, is not be extended by implication beyond its precise terms. After careful consideration, we are not prepared to hold that it comprehends and prohibits such a stipulation as that with which we have in the present litigation been called upon to deal.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*