(45 South. 396.)

No. 16,756.

SIMON et al. v. QUEEN INS. CO. OF AMERICA.

In re QUEEN INS. CO. OF AMERICA.

(Dec. 16, 1907.)

INSURANCE — CONDITIONS — FURTHER INSURANCE—PUBLIC POLICY.

The defendant issued its policy of insurance for $1,500 on the building in Shreveport, known as the "Simon Building." It was partially destroyed by fire. The policy contained the following clause:

"It is a part of the consideration of this policy, and the basis upon which the rate of premium is fixed, that the assured shall maintain insurance on each item of property insured by this policy of not less than 75 per cent. of the actual cash value thereof, and that failing so to do, the assured shall be an insurer to the extent of such deficit and in that event shall bear his, her, or their portion of the loss."

The assured obtained other insurance on the building, but fell short of obtaining insurance up to 75 per cent. of the building to the amount of several thousand dollars. On being sued, the defendant company claimed the benefit of the co-insurance clause contained in the policy. Plaintiff resisted this claim on the ground that the clause seeking to make him a co-insurer as declared therein was violative of the provisions of Act No. 135, p. 209, of 1900, known as the "Valued Policy Statute." This position was sustained by the court, and judgment was rendered accordingly. On appeal to the Court of Appeals that judgment was affirmed, and the case was then brought to the Supreme Court for review.

*Held,* the stipulation in defendant's policy as to the assured becoming a co-insurer with the insurance company in a certain contingency to the extent and under the conditions stated is not against public policy. It is not prohibited by law, and a prohibition should not be read into the law by construction. Liberty of contract is the rule, and limitations and restrictions the exceptions.

(Syllabus by the Court.)

Certiorari to Court of Appeal, Parish of Caddo.

Action by S. B. Simon and others against the Queen Insurance Company of America. Judgment for plaintiffs was reduced in the Court of Appeal and affirmed, and the insurance company applies for certiorari or writ of review.

Wise, Randolph & Rendall, for applicant. Sidney Levy Herold, for respondents. Clegg & Quintero and Philip Stephens Gidiere, amici curiæ.

NICHOLLS, J. The plaintiffs in this suit in the district court for Caddo parish brought suit against the defendant company, seeking to obtain a judgment against it in the sum of $738.91, alleging that they were the owners of the three-story brick building known as the "Simon Building" on lots Nos. 15 and 16, of block 32, of the city of Shreveport.

They averred: That on the 19th of December, 1905, through its agent, the defendant company issued to them, for the consideration of $22.25, a policy of insurance on said building for the sum of $1,500. That under the laws of Louisiana the defendant company, by the issuing of said policy, agreed and was legally bound in the event of dam-

age by fire to said building to pay them such proportion of the loss as the amount of said policy should bear to the total insurance on said building.

That in May, 1906, said building was partially destroyed by fire without their fault, and that the damage done said building was estimated and appraised by experts chosen by the defendant and by the plaintiffs at $10,154.40, which said sum the agents and adjusters of defendant company admitted to be the loss on the building.

That the total amount of insurance held by them on the building was $20,600, and that the amount due them by defendant, under their policy was the said sum of $738.91. They averred that they had complied with all their legal obligations under said policy, but that the defendant refused to pay the amount due, and refused to furnish proofs of loss or to make any settlement with them, except on their complying with certain illegal exactions demanded of them by it.

In view of the premises, they prayed for citation of defendant and for judgment for the amount stated.

The defendant answered. It admitted having issued the policy annexed to plaintiffs' petition, but denied that they (plaintiffs) had complied with any of the requirements upon them as a condition precedent to instituting suit and requiring judgment, and particularly denied that within 60 days after the fire plaintiffs rendered statement to it signed and sworn to by the assured, stating the knowledge and belief of the assured as to the time and origin of the fire, the interest of the assured and of all others in the property, the cash value of the property and the amount of loss thereon, all other insurances covering the same property, etc., as required by said policy, and hence the suit should be dismissed.

In the event that the foregoing plea should not be maintained, then, in the alternative, it alleged: That the policy contains a specific clause as follows:

"It is a part of the consideration of this policy and the basis upon which the rate of premium is fixed, that the assured shall maintain insurance on each item of property insured by this policy of not less than 75 per cent. of the actual cash value thereof and that failing so to do the assured shall be an insurer to the extent of such deficit, and in that event shall bear his, her, or their proportion of the loss."

That the appraised valuation of said property was $33,862.96. That the appraised loss or damage on the property was $10,154.40. That the insurance required by the 75 per cent. co-insurance clause, as above stated, amounts to $25,397.22. That the plaintiff obtained insurance from other fire insurance companies on the said property to the amount of $20,600, which, under the stipulations of said policy, should pay to the plaintiffs $8,236.36, and the assured having become a co-insurer with the insurance companies who wrote policies on the said property to the amount of $4,797.22, and should pay on the said loss or damage $1,918.04. That the apportionment made between defendant and the co-insurers, including the plaintiffs herein, show a liability on the part of the defendant for the said loss and damage of $599.73. Defendant averred that it attached to its answer a particular detailed statement of same, and statement of the loss on the building. It averred that it had made a tender of said sum of $599.73, with all costs which have accrued up to date of tender which plaintiffs have refused to receive, and hence it prays that plaintiffs' demand may be reduced to said sum, and judgment rendered accordingly, with costs which accrued up to the date of the tender. It prayed for all decrees necessary for general and equitable relief.

Plaintiffs thereupon filed a rule on defendant to show cause why judgment for the amount tendered, with costs, should not be rendered against defendant. Defendant re-

sisted plaintiffs' right to such judgment, unless in full settlement of demands for which tender was made.

The district court rendered judgment on this rule on the 28th of July in favor of the plaintiffs against the defendant for the sum of $606.93, being (the court declared) "the amount tendered by defendant."

The judgment further ordered and decreed that it (the judgment so rendered) should in no manner affect the right of plaintiffs to prosecute the suit further for the additional amount claimed by them, and that the right of the plaintiffs for the further prosecution thereof for such additional amount be, and the same are, fully reserved and the case continued open for such prosecution.

On the 31st of October, 1906, the district court rendered judgment in favor · of the plaintiffs against the defendant for the sum of $738, with legal interest thereon, from June 19, 1906, less $606.90, for which (the court declared) "plaintiffs have already obtained judgment against defendant."

Defendant appealed to the Court of Appeal from both judgments, and for answer to the appeal plaintiffs prayed for damages for a frivolous appeal in the sum of 10 per cent. on the judgment.

On appeal the Court of Appeal used the following language:

"While it was proper to enter judgment against the defendant for the amount judicially admitted to be due, reserving their right to defend the suit for the balance in dispute, the judgment also condemning defendant also to pay all costs of the case while the real contest was still pending, was an error which this court will have to correct, and this relieves defendants from damages necessarily. The answer to the appeal does not authorize allowance of interest on the judgment, as the prayer is only for affirmance of the judgment with damages for frivolous appeal in the amount of 10 per cent. stated.

"The judgment appealed from should be reduced to the amount judicially admitted to be due, which is the sum of $599.73, and as thus amended the judgment in this issue in this case appealed from is affirmed. The lower court also rendered judgment on trial of the case for amount of the balance claimed as due by the defendants, and an appeal from the judgment

by them brings up the main controversy in the litigation on the following allegations in defendant's answer: * * *

"'That the said policy contains a specific clause as follows: "It is a part of the consideration of this policy, and the basis upon which the rate of premium is fixed, that the assured shall maintain insurance on each item of property insured by this policy of not less than 75 per cent. of the actual cost value thereof, and that failing so to do the assured shall be an insurer to the extent of such deficit, and in that event shall bear his, her, or their proportion of any loss; that the appraised valuation of the said property was $33,862.96; that the appraised loss or damage on the property was $10,154.40; that the insurance required by 75 per cent. co-insurance clauses as shown above stated amounts to $25,397.22; that the plaintiffs obtained insurance from the fire insurance companies on said property to the amount of $20,-600, which, under the stipulations of said policy should pay to the plaintiffs $8,236.36, and the assured having become a co-insurer with the insurance companies who wrote policies on the same properties to the amount of $4,797.22, and should pay on the said loss or damage $1,918.04; that the apportionment made between the defendant and co-insurers, including plaintiffs herein, shows a liability on the part of the defendant for the said loss or damage of $599.73."'

"Which the plaintiffs insist is a violation of Act of 1900, p. 209, No. 135, entitled 'An act to fix the value of immovables by nature insured against loss or damage by fire, in case of loss or damage by fire.'

"'Section 1. That whenever any policy of insurance against loss by fire is hereafter written or rendered, on property * * * the value of the property is assessed by the insurer or as by him permitted to be assessed at the time of the issuance of the policy, shall be conclusively taken to be the true value of the property.

"'Sec. 2. That whenever * * * the said property shall be totally destroyed the full amount of the insurance on the property so destroyed shall be paid by the insurer and when the said property shall be partially damaged the insurer shall pay to the insured such amount as will permit the insured to restore the damaged property to its original condition.'

"There is nothing in the statute, to prevent co-insurance and it is usual in writing insurance for several companies to divide the risk of loss in this way, but the language of the statute is plain in regard to fixing the value of the property insured, and the amount assessed as the value of the property when the policy is written and issued 'shall be conclusively taken to be the true value of the property at the time of the damage or destruction.'

"The statute is equally clear and plain in regard to the amount due under the policy in the event of destruction or damage. We find, then, that the value of the property insured must be assessed before its destruction or damage, and that the insured shall be paid the full amount of the loss sustained by him, and, if the policy

contains the clause contended for in this case requiring the insured to become a co-insurer in the event that he does not insure his property within 75 per cent. of its value, the statute will be defeated in both of the provisions it was intended to emphasize and enforce, as such a clause is not effective when the property is fully insured, and the statute is that it shall be taken to be correctly assessed when the policy is issued and the value thus fixed shall be conclusive, unless the insurer has the value readjusted prior to the destruction of the property or its damage from causes insured against in the policy. This is full protection for the over-valuation of the property, and its undervaluation is presumed to be of no concern to the insurer against loss.

"The clause contended for by the defendant also violates the precise terms of the statute, in that it makes the insured bear a part of the loss sustained by him, when the clear and plain purpose of the statute expressly provides that he shall receive full pay for his losses to the extent of the amount fixed by the policy.

"The purpose of the statute being well known, and the language being free from all ambiguity, it becomes the duty of the court to enforce its provisions, and legal effect to the clause inserted in the policy contended for by the defendants, as it would defeat the provisions of the statute and give judicial recognition to an act in violation of a law enacted as a statute of public policy.

"It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed for the full amount of the debt sued for less the credit of $590.73, pursuant to the decree above entered in this cause."

Application for a rehearing having been refused, this judgment of the Court of Appeals has, by order of this court, been brought up for review.

The plaintiffs are the owners of the property in Shreveport known as the "Simon Building." Insurance was effected on it in various companies to an amount of $20,600. At the time the insurance was effected in the various companies the property was valued at $33,362.96. The policy written by the defendant company was for $1,500. The controversy grows out of the following stipulation contained in the policy 75 per cent. company insurance clause:

"It is a part of the consideration of this policy and the basis upon which the rate of premium is fixed that the insured shall maintain insurance on each item of property insured by this policy, of not less than 75 per cent. of the cash value and that failing so to do the insured shall be an insurer to the extent of such deficit and in that event shall bear his or their proportion of any loss."

The plaintiffs failed to obtain co-insurance by an amount of $4,797.22, and under the stipulations quoted from the policy the plaintiffs became (according to defendant's contention) co-insurers with the companies which wrote the insurance to the said amount of $4,797.22, so that, if plaintiffs are properly chargeable as co-insurers for the said amount, then the amount due by defendant is $599.73, as claimed in the answer, and not the larger amount claimed by plaintiffs to be due. The damage fixed between the parties to the property by the fire complained of was $10,154.40 (which defendant claims) should be apportioned between the companies in proportion to the amounts written by them as shown by the statement which they filed in the suit.

Plaintiffs contend, first, that Act No. 135, p. 209, of 1900, fixes the liability of the insurance company at such proportion of the loss as its policy bears to the total insurance; second, that, such being the case, the insured is not bound by the declaration of the company in its policy that its liability shall in any event be less than its legal responsibility.

They say that, when Act No. 135, p. 209, of 1900, provides that "the insurer shall pay to the insured such amount as will permit the insured to restore the property to its original condition," the Legislature could not have intended otherwise than that, where there were several insurers, they should be "the insurer" under the act, and become liable jointly each for its pro rata share of the loss as determined by the relative amounts stipulated in their policies.

"All the insurers are jointly in contemplation of the law as it stands 'the insurer'; hence the liability of each is based on its proportion of the whole loss."

"There would be no difficulty whatever, therefore, in determining that defendant was liable for the amount claimed in the absence of the stipulation relied upon by defendant. We contend that under the statutory law there is no difficulty now in establishing its liability in that sum."

Plaintiffs refer the court to Queen Insurance Company v. Leslie, 47 Ohio St. 409, 24 N. E. 1072, 9 L. R. A. 45; Daggs v. Insurance Co., 136 Mo. 382, 38 S. W. 85, 35 L. R. A. 227, 58 Am. St. Rep. 638; Clemens on Fire Insurance, p. 98, Rule 17, and note; Wall v. Equitable Life Ins. Co. (C. C.) 32 Fed. 273.

Defendants' counsel in their brief quote from 4 Cooley on the Law of Insurance, p. 3115, as follows:

"A co-insurance clause in a policy limiting the risk of the insurer to such proportion of the loss as the sum insured bears to the value of the whole property covered is reasonable and valid. Pennsylvania Fire Insurance Co. v. Morre, 21 Tex. Civ. App. 528, 51 S. W. 878.

"And a stipulation in a policy that, if insured shall fail to comply with a covenant on his part to maintain total insurance of not less than 75 per cent. of the total cash value of the property, he shall be deemed a co-insurer to the extent of 'the deficiency, and in that event shall bear his proportion of all loss occurring under the policy, is not in contravention of a statute providing that all insurance companies shall pay the full amount of loss sustained on the property insured by them, providing said amount does not exceed the amount of insurance expressed in the policy, and which declared that all stipulations to the contrary shall be void according to Fireman's Ins. Co. v. Pekor, 106 Ga. 1, 31 S. E. 779. And in Quinn v. Fire Ass'n of Philadelphia, 180 Mass. 560, 62 N. E. 980, a rider attached to a policy which provided that insured should maintain insurance on the property to the extent of 80 per cent. of the cash value thereof, and, failing to do so, should be an insurer to the extent of such deficit and to that extent should bear his proportion of the loss, if any, was held not objectionable as not being within a statute permitting companies to attach provisions adding to or modifying the standard form."

Counsel say:

"Thus it will be seen that not only is the stipulation for co-insurance legal, but that the further stipulation of failing to secure co-insurance on the amount agreed on would make insurer a co-insurer for such deficit has also been held legal. Standard policies in general in this country provide for co-insurance, and lower rates are obtained by insurers by reason thereof than would otherwise be obtained. There could, of course, be no discussion on this point, but for the statute known as the 'Valued Policy Act' of the Louisiana Legislature. Act No. 135, p. 209, of 1900. * * *"

That act says:

"The insurer shall pay," etc.

Who is the insurer?

"The contract says that the insured shall become an insurer under certain conditions, and the act in question does not prohibit such contracts. It was not intended, nor does it, to prevent insured from himself becoming by actual agreement with insurers a co-insurer for certain amount of damages. That is a matter which is purely personal, and is in no way against public policy, and does not contravene the statute in question."

In the brief filed by the amici curiæ in this case they copy the following extract from Fireman's Fund Ins. Co. v. Pekor, 106 Ga. 1, 31 S. E. 779:

"Surely, where several companies together carry on a common risk, each in proportion established by the face of its policy as compared with the total amount of the insurance effected, no greater sum than its pro rata share of the loss sustained can be recovered by the assured from any one of such companies.

"Indeed, no recovery at all can be had from a given company unless necessary to indemnify the assured, so, if he has effected insurance with seven companies, for instance, and six of them discharge his just claim, the liability of the seventh company will be to its co-insurers not to the insured himself. Insurance Co. v. Gwinn, 88 Ga. 65, 13 S. E. 837."

"Co-insurance being then expressly recognized by our Code as entirely legitimate and proper, it is pertinent to inquire into the nature of the contract by which the same may be effected.

"The doctrine as to contribution between co-insurers is based upon the ground that 'Where several policies in different offices insure the same party upon the same subject-matter against the same risk, as there can be but one loss, and one indemnity, the several offices, as between themselves, must contribute proportionately to the loss, though each is liable to the insured for the entire loss, unless there is a special agreement that each shall be liable only for its proportional part. The several insurers are regarded as if they were one, each standing as a co-surety with the other, according to the amount which he undertakes, just as if all had underwritten the same policy. To avoid circuity of action the pro rata limitation was introduced.' 2 May, Ins. § 434. In this state it is unnecessary for a co-insurer to stipulate with the assured against liability for the entire loss; for it is expressly provided by law that, in the event the latter 'has several policies on the same property, the recovery from each company will be pro rata as to the amount insured.' Civ. Code Ga. 1895, § 2109. Reduced to its legitimate analysis, the contract between the assured and the co-insurers appears to be as follows: No one of the latter assumes the entire risk, and consequently can in no event be called upon to pay the entire loss. They combine to carry the whole risk, and to assume responsibility for any

indemnity which may justly be demanded. Each bears only such a proportion of the risk as he contracts to undertake, and his pro rata of the indemnity to which the assured is entitled in case of loss should be measured accordingly. For instance: Suppose the owner of property worth $20,000 desired to place thereon insurance to the amount of $15,000, and, while no one of three companies was willing to assume the whole risk, each readily agreed to share an equal proportion thereof, and thus become responsible for one-third of any loss which might occur not in excess of the total amount of the insurance issued in accordance with such an arrangement. Clearly, in such a case, it could not be said that the contract was in its essence vicious or violative of the policy of the law as declared by the act of 1895, which apparently seeks to hold an insurer liable to the extent of the face of the policy, where the loss insured is equal to or exceeds the amount therein stated, whenever he undertakes to assume alone the entire risk, and exacts premiums upon that basis. Again, suppose a company, declining to assume the entire risk, agreed to undertake the liability of a co-insurer to the extent of one-third of the risk, with the express understanding that, if the assured failed to comply with an undertaking on his part to procure other companies willing to assume the remaining two-thirds of the risk, he himself should be considered as carrying that proportion of the same, and in no event should the company's liability exceed its just pro rata of the losses, to wit, one-third thereof, a proportion exactly corresponding with the measure of risk the company was paid to assume. Such a contract would seem to be far from iniquitous. If a perfected arrangement for co-insurance is beyond reproach, why may not parties legitimately contract with the view to bringing about an arrangement of this kind, and stipulate that the insurance issued shall be upon that basis, instead of upon the plan upon which single policies are ordinarily issued? We understand the stipulation contained in the policies now under consideration to have no other object than to evidence an agreement between insurer and assured that the former shall occupy the position of a co-insurer, undertaking to assume only a fractional part of the risk, and therefore liable for no greater proportion of any loss which might occur.

"It is urged by counsel for the defendants in error that this stipulation is intended to operate as an evasion of the law, and is a mere subterfuge to which insurance companies have resorted. If the requirement imposed upon the assured of keeping up additional insurance to a given amount were one with which it would be impossible or extremely difficult for him to comply, there would be a great deal of force in the suggestion of counsel. But we do not understand that it is at all impracticable or difficult for the owner of property which is a fair risk to obtain insurance of not less than 75 per cent. of the total cash value thereof.

"At any rate, we are not judicially informed that such a requirement may not readily be met,

and are not, therefore, in a position to say it is obviously so unreasonable as to indicate a purpose on the part of the insured to place the assured in a situation where he cannot comply with his obligations, in order that the nonfulfillment thereof may be urged as a reason why the amount of recovery under the policy should be reduced below the sum specified as the limit of liability. Had the assured in the present case complied with his covenant to carry a total insurance of 75 per cent. of the value of the property insured, clearly he could claim of the insurance companies who issued policies on this express understanding and condition only their pro rata of the loss sustained. He offers no excuse whatever for his failure to comply with his solemn agreement. To allow him to profit by his breach of faith would be to permit him to take advantage of his own wrong. He appears in this court, not as one who can lay any claim to having conscientiously tried to comply with his legal and moral obligations under a contract to which he voluntarily assented, but in the attitude of one who seeks to evade and override his agreement upon the ground that the policy of the law prohibited his entering into the same, and accordingly he is not, in strict law, bound thereby. This inclines us, without reluctance, to administer the law as we find it in its strict technical sense. The act of 1895, being in restraint of the common-law right of freedom to contract, is not to be extended by implication beyond its precise terms. After careful consideration, we are not prepared to hold that it comprehends and prohibits such a stipulation as that with which we have, in the present litigation, been called upon to deal. Judgment reversed."

We think under the authorities cited that defendant's position in this matter is correct. Our Code (Civ. Code, art. 1764) declares that all things that are not forbidden by law may legally become the subject or motive for contracts. Liberty of contract is the rule, limitations and restrictions the exception. We do not find that the stipulation in defendant's policy as to the assured becoming a co-insurer with the defendant in certain contingency and conditions (which plaintiffs attack) is against public policy. It is not prohibited by any law, and we do not think it should be read into the statute of 1900 by construction.

The judgment of the Court of Appeal to the extent complained of by the defendant is erroneous, and must be corrected.

We do not think the question as to whether plaintiffs were entitled to recover damages

from defendant for a frivolous appeal by reason of its suspensive appeal from the judgment in favor of the plaintiffs for the amount it admitted it owed, and which it tendered them, is before this court. The only party seeking a review of the judgment of the Court of Appeal is defendant. Plaintiffs' position, as matters stand, is one seeking to maintain the judgment as rendered.

For the reasons herein assigned, the judgment of the Court of Appeal reducing the first judgment which the district court rendered in favor of the plaintiffs against the defendant from the sum of $606.93 to the sum of $599.73, and after said reduction made affirming the judgment of the district court, which was appealed to that court, be and the same is hereby affirmed.

It is further ordered, adjudged, and decreed that the judgment of the Court of Appeal, in so far as it rendered judgment later in favor of the plaintiffs against the defendant for sum over and above the amount for which said first judgment was rendered in favor of the plaintiffs against defendant, be and the same is hereby annulled, avoided, and reversed, and the demand of the plaintiffs against the defendant for an amount over and beyond the amount admitted by defendant to be due is hereby rejected, and said demand dismissed, at plaintiffs' costs in the Court of Appeal and in this court.