James B. Bice *vs.* The Home Insurance Company, a corporation created by and existing under the laws of the State of New York.

Same *vs.* The Industrial Fire Insurance Company, a corporation created by and existing under the laws of the State of Ohio.

Insurance—Agreed Valuation Held Basis of Settlement, in Action on Policy Containing Coinsurance Clause, For Partial Loss.

Two insurance companies had each issued polices of $3,000 on the property; the value thereof being agreed on as $8,000 as to the building only, and each policy contained the 80 per cent. reduced rate contribution clause. There was a partial loss of $2,609.66, and appraisers appointed under the policy found the sound value of the building to be $15,000. Defendants contended that, the loss being partial, the agreed value was to be disregarded,

·31 Del.]        Bice vs. The Home Ins. Co.                295

Statement.

as respects the coinsurance clause, and that since the insurance carried was $6,000, instead of the required 80 per cent. of $15,000, namely, $12,000, they were liable for only 6,000/12,000, or ½ of the partial loss, or $1,304.83, or $652.42 on each policy. *Held* that, under *Rev. Code* 1915, § 599, the agreed valuation would not be disregarded, although the loss was only partial, but such valuation would furnish the basis of settlement as follows: Deducting from the 80 per cent. of the agreed valuation of $8,000, namely, $6,400, the total insurance of $6,000, left $400, as to which insured was his own insurer under the coinsurance clause, so that he should bear 400/6400, or 1/16, of the partial loss, leaving 15/16, or $2,446.50, to be paid by the insurance, or $1,223.25 on each policy.

(*May* 20, 1921)

PENNEWILL, C. J., and BOYCE, J., sitting.

*W. Watson Harrington* and *James M. Satterfield* for plaintiff.

*Henry Ridgely*, *Arley B. Magee* and *G. Ross Veazey* (of the Maryland Bar) for defendants.

Superior Court for Kent County, April Term, 1921.

ACTIONS of ASSUMPSIT, Nos. 16 and 17, April Term, 1920.

Actions by James B. Bice against the Home Insurance Company and against the Industrial Fire Insurance Company. Judgments for the plaintiff.

In these cases the defendant insurance companies had each issued separate policies in the sum of $3,000. On the policy of the Home Insurance Company, dated October 28, 1919, there was indorsed:

"It is agreed between the insurer and the insured that the value of the insured property is of the sum of $8,000, as to the building only."

On the policy of the Industrial Fire Insurance Company, dated October 28, 1919, there was a similar indorsement.

Each policy contained the 80 per cent. reduced rate contribution clause, as follows:

"In consideration of the reduced rate and (or) form under which this policy is written, it is expressly stipulated and made a condition of this contract that in the event of loss this company shall be liable for no greater proportion thereof than the amount hereby insured bears to 80 per cent. of the actual cash value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

The fire occurred on the 5th of February, 1920, and the appraisers appointed under. the policy agreed in writing upon an award fixing the sound value of the building at $15,000, etc.

For the defendant companies the claim was made that there are two possible theories as to the extent of their liability:

(1)   If the agreed valuation of $8,000 is accepted as controlling, then, under the 80 per cent. clause, Mr. Bice should have carried insurance in the sum of $6,400.   He, however, carried insurance only in the sum of $6,000;  he is therefore his own insurer to the extent of $400.   The loss was $2,609.66, and under this theory the insurance company should pay 60/64 or 15/16 of the loss, and Mr. Bice should bear 1/16 of the loss.   The companies would, therefore, pay the sum of $2,446.50 or $1,223.25, on each policy.

(2)   If the agreed value in the policy is to be disregarded, and the value of the appraisers accepted, then 80 per cent. of the appraised value of ($15,000) would be $12,000.

(3)   Since the plaintiff carried only $6,000 in insurance, the companies would then be liable for 6/12 or 1/2 of the total loss, or $1,304.83, or $652.42 on each policy.

The real question thus presented was:   Whether, under the Delaware law, in case of partial loss, the coinsurance clause in a valued policy supersedes the clause with respect to agreed valuation, or whether the agreed valuation clause furnishes the figure by which settlement of the loss is to be finally determined.

It was the contention of the defendant companies that, in cases of partial loss, the award of the appraisers is binding as to the value of the property at the time of the fire, and that, therefore, the liability of the two defendants in this case is $1,304.83.

The questions raised appear in the opinion of the court.

Pennewill, C. J., delivering the opinion of the court:

The above-mentioned cases involve the same questions of law, and it was understood that the decision in one should apply to the other.

The cases are before the court on an agreed statement of facts, which according to the case stated, filed in the first-mentioned action, are as follows:

"And now, to wit, this 27th day of April, A. D. 1921, it is agreed by and between the attorneys for the plaintiff and defendant in the above-stated cause that the following case be stated for the opinion of the court, in the nature of a special verdict, either party to have the right to sue out a writ of error on the judgment to be entered in the cause:

"That on the 1st day of October, 1919, the defendant issued and delivered to the plaintiff the policy of fire insurance hereto attached.

"That at said time the plaintiff was and still is the owner of the property described in the said policy.

"That on the 5th day of February, 1920, the said property was damaged by fire, but was only partially destroyed.

"That at the time of said fire the total amount of the insurance on the said property was $6,000, $3,000 of which was under the policy hereto attached, and the remaining $3,000 was under a policy issued by the Industrial Fire Insurance Company, a copy whereof is hereto attached.

"That each of the said policies was issued with and under the 80 per cent. reduced rate contribution clause.

"That a dispute having arisen between the plaintiff and the defendant (and also between the plaintiff and the aforesaid the Industrial Fire Insurance Company) as to the amount of the loss sustained by the plaintiff under the aforesaid policies by reason of the fire aforesaid, the said plaintiff and the defendant and the aforesaid the Industrial Fire Insurance Company did enter into, make and execute the agreement hereto attached, dated March, 1920; the Harvey B. Riggs named in the said agreement having been selected by plaintiff and the Charles A. Cummins named therein having been selected by defendant.

"That on March 24, 1920, the said Riggs and Cummins made the award hereto attached under the agreement aforesaid.

"That, as appears by the said policies, each of them contained a statement that it was agreed between the insurer and the insured that the value of the insured property was $8,000.

"That, as appears by the aforesaid award hereto attached, the sound value of the insured property at the time of the fire was found to be $15,000.

"If the court shall be of the opinion that the $8,000 stated in the policy to be the agreed value of the property insured is controlling as to the actual cash value of the property described in the policy at the time when the loss happened as provided by the reduced rate contribution clause aforesaid, then judgment shall be entered for the plaintiff in the sum of $1,223.25, with interest thereon from April 5, A. D. 1920; otherwise judgment shall be entered for the plaintiff, in the sum of $652.42, with interest thereon from April 5, A. D. 1920."

The decision in this case depends upon the construction the court shall place on our statute, *Revised Code* 1915, § 599, because, no matter what may be the provisions of the policy, the state law must control. And the statute expressly says that—

"The contracts made by such policies and renewals shall be construed to be contracts made under the laws of this state."

The question then is: What does said section mean when applied to the facts of the present case?

The section is as follows:

"Whenever any policy of insurance shall be issued to insure any real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed without criminal fault on the part of the insured, or his assigns, the amount of the insurance stated in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages, subject to the proviso herein; and every such policy, whether hereafter issued or renewed, shall have indorsed across the face of it the following: 'It is agreed between the insurer and insured that the value of the insured property is of the sum of $——; and this estimate shall be binding on both parties as to value, and in case any owner shall effect any subsequent insurance: Provided however, that nothing herein contained shall, in case of loss, prevent the company insuring from adjusting the loss by replacing the property destroyed; upon any larger value than so agreed, all insurance as well that then existing as that subsequently obtained shall become void.

"This section shall apply to all policies of insurance made or issued upon real property in this state, and also to the renewal which shall be made, of all policies issued in this state, and the contracts made by such policies and renewals shall be construed to be contracts made under the laws of this state.

"The court, upon rendering judgment against any insurance company upon any such policy of insurance, shall allow the plaintiff a reasonable sum as an attorney's fee to be taxed as part of the costs."

The question naturally arises: Did the Legislature, in enacting the statute, have in contemplation any other than a total loss?

It is first declared that the amount of insurance stated in the policy shall be taken to be the true value of the property insured if it shall be wholly destroyed; and then follows the provision that the parties shall agree upon the value of the property in every case and make it a part of the policy; and the statute further provides that such estimate shall be binding on both parties as to value.

As we have already said, the decision of the case depends upon the proper construction of the statute in question, and that being so we do not think the authorities cited on either side are very helpful. They are interesting as showing the history and development of insurance law in some particulars, but of little assistance in the interpretation of our own statute which is unlike any other we have seen.

While there may be a difference of opinion as to whether the Legislature, in enacting the statute, contemplated a partial loss, there can be no doubt that the language employed is broad enough to comprehend it.

The court are of the opinion that if there is an agreed value of the property insured, indorsed on the policy in accordance with the statute, such value must furnish the basis of settlement if the property shall be partially destroyed, and we reach this conclusion because of the apparent meaning of the statute, the general language employed therein, and also because of what we think was the main purpose of the Legislature in enacting the statute.

The law requires that every policy issued to insure real property in this state shall have indorsed across its face the value of the property insured as agreed upon by the insurer and insured, and that this estimate shall be binding on both parties as to value. It would be impossible to use more general language.

But to make the application of the statute more certain in every case of loss, it is further provided that the section shall apply to all policies of insurance made or issued upon real property in this state.

We think the Legislature intended to make every policy of insurance issued on real property a valued policy for all purposes, and prevent the issuance of an open policy in any case. We are convinced that such was the primary object of the law; and the reason for it, no doubt, was the desire to prevent disagreements and difficulties thereafter in fixing the value of property in the ascertainment of the amount of loss.

It is argued by the defendant, with some force and reason, that the agreed value was not intended to apply to a partial loss because there could be no agreement at the time the policy is issued, as to the value of a part of the property insured. But it should be noted that in order to make the value indorsed on the policy operative in case of partial loss it is not necessary that the value of any part of the property should be agreed on. The agreed value in the policy is designed, not to fix the value of a part but to furnish the basis upon which settlement shall be made in case of any loss. And it is not, as defendant contends, destructive of the agreement of the parties, that in case of disagreement as to the loss the same shall be ascertained by appraisers. Even though the agreed value govern in case of partial loss, there would still

be reason for the appointment of appraisers in case of disagreement as to the loss. Their duty is not to fix the value of the property destroyed, but the amount of the loss the insured has sustained; and this is done, we apprehend, by estimating what it will cost to repair or replace the property destroyed.

There is another consideration that has influenced the court to some extent in reaching their conclusion, and it goes, in a way, to the mutuality of the agreement between the insurer and insured. The statute is expressly read into every insurance policy on real property, and every provision of the contract should be equally binding on both parties thereto. If the loss in this case, as ascertained by the appraisers, had been in excess of the amount of insurance stated in the policy, it is very certain the insurer would not pay more than the amount stated, and it is equally certain that in a suit on the policy a greater sum could not be recovered. But it is contended by the insurer that, while the amount of the insurance stated in the policy is binding on the insured, the value of the property, indorsed on the policy, is not binding on the insurer. In other words, the maximum amount the insured shall receive is fixed by the contract no matter what may be his actual loss, but the amount the insurer shall pay, in case of partial loss is to be governed by the actual value of the property at the time of the loss.

The insured cannot receive more than the agreed value in any case because the insurance stated in the policy never exceeds it, but the insurer may disregard such value in case of partial loss and settle on a different basis. This means, of course, that the agreed value shall be binding on the insured but not on the insurer. We do not think a construction should be placed on the statute that will produce such a result.

A like thought must have been in the mind of the court in the case of *International Nav. Co. v. Atlantic Mutual Ins. Co. (D. C.)* 100 *Fed.* 304, 316, for in the opinion the court said:

"In my view, the New York rule is most consonant with the terms of valued policies and with the object of a valuation, which is to limit both parties on the question of value. *Insurance Co. v. Hodgson*, 6 *Cranch*, 206, 220, 3 *L. Ed.* 200. When the value has been fixed by agreement the owner should

not be compelled to stand constructive insurer (in a settlement between himself and his actual insurers) of any uninsured value of his ship beyond the amount agreed on in the policy. Yet that is the precise effect of the English and Boston rule. In case of total loss, or of partial loss and repair, the owner is held estopped from claiming beyond the agreed value. The estoppel ought to be mutual (3 *Kent. Com.* 274); and the insurer who has agreed to a fixed value of the ship, ought not to be allowed, in case of a loss within the policy, to reject the valuation and to reduce the claim upon him, on the mere ground that the vessel is worth more than the sum agreed upon, and that the owner should stand constructive insurer as to the excess, and bear, with the actual insurers, a pro rata share of the loss. Such a rule is unequal and unjust, since it enforces the valuation as against the owner, but ignores it as against the insurer."

Each of the rules mentioned in this opinion has been followed where the property insured was personal property, and particularly goods or merchandise; but we do not understand there have been two rules where the property was real property. In the case just referred to, the court held that but one rule was applicable. to a ship, and gave the reason why a different one might apply to goods and merchandise.

In concluding the opinion the court used this language:

"But considering that no great variation in the policy value from the true value can ordinarily take place, except with the knowledge and consent of both parties, each may well be held to abide the result of his venture, according to the conventional rule of adjustment."

The cases cited by the defendant as most analogous to the one before the court are *Harris v. Eagle Fire Co.*, 5 *Johns. (N. Y.)* 368, and *Lancashire Ins. Co. v. Bush*, 60 *Neb.* 116, 82 *N. W.* 313.

In the first mentioned case the court held the loss to be like a total loss, because each article lost was of equal value with every other article constituting the cargo; and the loss could, therefore, be ascertained by computation. Such being the case, all that was said about the manner of ascertaining a partial loss was clearly obiter.

As to the Nebraska decision it is enough to say that the statue upon which it is based differs from ours in a very important particular. It is identical with the first part of our law, but contains no requirement, so far as we could find, that an agreed value of the property shall be indorsed on the policy. It simply makes the amount of the insurance stated in the policy the true value of the

property insured and the true amount of the loss and measure of damages in case the property insured shall be wholly destroyed. Certainly such valuation would not apply to a partial loss, and if our statute contained nothing more than this in respect to the value of the property there would be no contention that it controls in the present case. The policy would be an open one with respect to a partial loss.

In our statute, as in the Nebraska law, it is first stated what shall be the measure of damages in case of total loss, viz. the amount of the insurance written in the policy, and then follows in the Delaware statute, but not in the Nebraska law, the provision that in every policy on real property there shall be indorsed across the face of it the value of the property agreed upon by the parties. It is impossible for the court to see any sound reason for this agreed valuation unless it is intended to furnish the basis for settlement if there shall be a partial loss.

The statute not only requires that the value of the property shall be agreed upon and indorsed upon the policy, but that such estimate shall be binding on both parties as to value. We construe this language to mean, that if any controversy shall arise between the insurer and insured involving the value to be placed on the property covered by the policy, the agreed value shall govern in ascertaining the amount of loss.

Many of the cases cited at the argument on both sides were cases that involved personal property. We are dealing with insurance policies on real property, and with the construction of a Delaware statute governing the same. For that reason, we think most of the citations are hardly applicable to the question before the court.

If it should be thought the construction the court have placed on our statute will work a hardship upon insurers, it may be said that the insurer need not agree to a valuation of the property insured that is far below its real value. If there is an agreement we think the value agreed on must govern in case of partial loss.

Judgment will be entered in each case in conformity with this opinion and the agreement in the case stated.

The court then made the following order:

And now to wit, this 20th day of May, A. D. 1921, the above and foregoing case having been heard on a case stated and having been fully argued by counsel on both sides, the court is of the opinion that the $8,000 stated in the policy, as the agreed value of the property insured, is controlling, as to the actual cash value of said property described in said policy at the time when the loss happened as provided by the reduced rate contribution clause, set forth in said policy.

It is therefore ordered, adjudged and decreed that judgment be entered for the plaintiff in the sum of $1,305.80 (being $1,223.25, with interest thereon from April 5, A. D. 1920), as was agreed in said case stated; and

It is further ordered, adjudged and decreed that the costs of this case be paid by the defendant and that the sum of $150 be allowed to the plaintiff as an attorney fee and that said sum be taxed as a part of said costs in this case and be paid by the defendant.

A similar order was made in the other case.