AMERICAN INSURANCE COMPANY, a corporation of the State of New Jersey, THE AUTOMOBILE INSURANCE COMPANY, a corporation of the State of Connecticut, THE CAMDEN FIRE INSURANCE ASSOCIATION, a corporation of the State of New Jersey, THE CONTINENTAL INSURANCE COMPANY, a corporation of the State of New York, and NORTHERN INSURANCE COMPANY, a corporation of the State of New York, v. GUISEPPI IACONI and ANTONIA IACONI.

(*June* 4, 1951.)

TERRY, J., sitting.

*William E. Taylor* and *Gerrard P. Kavanaugh* for plaintiffs.

*Robert C. Barab* and *Joseph A. L. Errigo* for defendants.

Superior Court for New Castle County.

TERRY, J.:

A determination of the questions involved relates to the proper interpretation to be given certain language employed under the provisions of Section 50, Chapter 81, Volume 45, *Laws of Delaware, Revised Code* of 1935, § 511, Chapter 20, Section 50.

"Sec. 50. Valued Policies; Fire; Tornado; Lightning; Liability Under; Entry Thereon; to What Policies Applicable; Judgment Thereon:—(a) Whenever any policy of insurance shall be issued to insure any real property in this State against loss by fire, tornado, or lightning, and the property insured shall be wholly destroyed without criminal fault on the part of the insured, or his assigns, the amount of the insurance stated in such policy (except policies with blanket coverage provided for in Subparagraph (b) hereof) shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages, subject to the proviso herein; and every such policy, whether hereafter issued or renewed, shall have endorsed across the face of it the following: 'It is agreed between insurer and insured that the value of the real property

insured is the sum of $............'; and this estimate shall be binding on both parties as to value; provided, however, that nothing herein contained shall, in case of loss, prevent the company insuring from adjusting the loss by replacing the property destroyed. And in case any owner shall effect any subsequent insurance on the same property, upon any larger value than so agreed, all such insurance, that then existing as well as that subsequently obtained, shall become void.

"(b) Nothing in this Act contained shall be construed as prohibiting insurers from issuing policies with blanket coverage on two or more separate buildings or units of real property or policies covering real and personal property; provided, however, that when insurance is written under a blanket item covering real and personal property or covering two or more separate buildings or units of real property, a single total value shall be agreed upon between the insurer and insured as to the real property insured, and such agreed value shall be endorsed across the face of any such policy as provided in Subparagraph (a) of this Section.

"(c) This Section shall apply to all policies of insurance made or issued upon real property in this State, and also to the renewal which shall be made of all policies issued in this State, and the contracts made by policies and renewals shall be construed to be contracts made under the laws of this State.

"The Court upon rendering judgment against any insurance company upon any such policy of insurance shall allow the plaintiff a reasonable sum as attorney's fee to be taxed as part of the costs."

A brief review of certain enactments from which the present statute stems will be found to be pertinent. The Legislature in 1889 enacted Chapter 695 of Volume 18, *Laws of Delaware.*

Chapter 695. Section 1. "Whenever any policy of insurance shall be issued to insure any real property in this State against

loss by fire, tornado or lightning, and the property insured shall be wholly destroyed without criminal fault on the part of the insured, or his assigns, the amount of the insurance stated in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages; and every such policy, whether hereafter issued or renewed, shall have endorsed across the face of it the following: 'It is agreed between insurer and insured that the value of the insured property is of the sum of $_____'; and this estimate shall be binding on both parties as to value, and in case any owner shall effect any subsequent insurance upon any larger value than so agreed, all insurance as well as that then existing as that subsequenty obtained shall become void.

"Section 2. This act shall apply to all policies of insurance hereafter made or issued upon real property in this State, and also to the renewal which shall hereafter be made, of all policies heretofore issued in this State, and the contracts made by such policies and renewals shall be construed to be contracts made under the laws of this State.

"Section 3. The court upon rendering judgment against any insurance company upon any such policy of insurance, shall allow the plaintiff a reasonable sum as an attorney's fee to be taxed as part of the costs."

In 1893 Chapter 695 of Volume 18 was amended by the enactment of Chapter 696, Volume 19, *Laws of Delaware*.

Section 1. "That Section 1 of Chapter 695, Volume 18, of the *Laws of Delaware*, be and the same is hereby amended by inserting between the word 'damages' and the word 'and,' in the eighth line thereof, the words 'subject to the proviso herein'; and that the said section be and the same is hereby further amended by inserting between the word 'value,' in the twelfth line, and the word 'and' in the thirteenth line thereof, the following: 'Provided however that nothing herein contained shall, in case of loss, prevent the company insuring from adjusting the

loss by replacing the property destroyed.' "

In 1931, Chapter 52, Volume 37, *Laws of Delaware* was enacted, under which the law regulating the business of insurance was revised and consolidated. Under Section 50 of said Act, Chapter 695 of Volume 18, id., as amended by Chapter 696 of Volume 19, id., was re-enacted. In 1945 the Act of 1931 was amended by the enactment of Chapter 81, Volume 45, id., Section 50, Article 4, Chapter 20, *Revised Code* of 1935.

I find in existence substantially the same statute from 1889 down to the present with the exception of the amendments in 1893 and 1945, which together permit an adjustment of the loss by replacing the property destroyed (1893) and a blanket coverage under a single agreed value (1945).

Each policy contains the following co-insurance clause: "Co-insurance Clause: In consideration of the reduced rate and (or) from under which this policy is written, it is expressly stipulated and made a condition of this contract that in the event of loss this company shall be liable for no greater proportion thereof than the amount hereby insured bears to 80% * * * of the actual cash value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

The plaintiffs contend—

(1) That the provisions of Section 50, id. (Chapter 81, Volume 45, *Laws of Delaware*), apply only to instances where the property is wholly destroyed, and can have no application whatsoever to instances where the fire damage results in a partial loss only.

(2) That if Section 50, id., be held to apply uniformly to total and partial losses then the agreed value clause must be said to furnish the basis upon which settlement is to be made in case of any loss; that in case of a partial loss the policy should be opened not for the purpose of setting aside the agreed value,

but for the purpose only of determining the extent to which the agreed value will be used in fixing the insurer's liability for the insured's loss; thus, in determining damages the percentage of destruction must first be ascertained then applied to the agreed value in order to determine the money value of the loss. It is contended that the percentage of destruction results from the application to the agreed value of all the buildings of the percentage which current repair costs of the damaged portion of said buildings bears to the current replacement costs of all the insured buildings.

The defendants contend—

(1) That the provisions of Section 50, id., apply uniformly to total and partial losses;

(2) In cases involving a partial loss the agreed valuation is used only to determine the extent to which the insured is a co-insurer and does not serve as an aid in computing damages;

(3) That under a partial loss the insured is entitled to his actual damages up to the maximum limit of liability under the policy (open policy rule), or

(4) Such an amount that is required to replace the damaged property up to the maximum limit of liability under the policy (replacement or repair cost rule).

The question presented is: Are cases involving partial losses embraced within the provisions of our valued policy statute? If so, then what is the proper method of computing the insured's damages in such cases?

The substance of the plaintiff's argument is predicated upon two grounds: First, they say that the language employed under the statute precludes a determination that partial losses were designed to be embraced within its provisions. They insist that the use of the words "wholly destroyed" without mention of a partial loss or the manner of computing damages thereunder

clearly connotes that only one class of loss, that is, a total loss, was intended. They further say that the requirement that the agreed valuation be endorsed across the face of the policy is not indicative of any intended rule of damages, and that the amendment in 1893, granting the option to the insurer to replace, was clearly intended to apply only to instances where the property insured is wholly destroyed. Second, they say that if the statute is to be held to be applicable to cases involving partial as well as total losses, then any loss however arrived at must be related to the agreed value if the statute is to be applied uniformly to both types of losses. Thus, if the agreed value is designed to furnish the basis upon which settlement is to be made in case of any loss, then the same rule which is adopted for a total loss where the insured would recover 100% of the maximum liability of his policy should be applied in a case of a partial loss; that is, the policy should be opened not for the purpose of setting aside the agreed value but only for the purpose of determining the extent to which the agreed value will be used in fixing the insurer's liability for the insured's loss, and, if the loss can be fixed at one-fourth, one-half or some proportion of the insured's property, the insurer must pay that proportion of the agreed value in settlement of its liability for the partial loss sustained. It is contended that the application of this formula as a method of computing damages would result, in the present case, in the plaintiffs owing the defendants $5,650, which is determined by opening the policies then applying the percentage of destruction (37.87%), as contended for by plaintiffs, to the agreed value ($15,000).

The defendants argue (1) that the provisions of the statute should be construed to include partial as well as total losses; (2) that the method of determining the measure of damages under a partial loss is first to determine to what extent, if any, the insured is a co-insurer. In the present case they say this is done by applying the 80% co-insurance clause to the agreed value of $15,000; that, since 80% of $15,000 is $12,000, they are

not co-insurers to any extent whatsoever; therefore, the plaintiffs are liable to them for the actual amount of their damages up to $12,000, the face value of the policy, and that, since their damages are in excess of $15,000, they are entitled to the face amount of their policy, or $12,000; or (3) that the method of determining the damages is first to determine to what extent the insured is a co-insurer, as indicated under (2), then allow the insured whatever amount is found to be necessary to replace the damaged property up to the insurer's liability under the policy.

I now return to a discussion of the question: Did the Legislature in enacting our valued policy statute have in contemplation any other than a total loss? This question was before the Superior Court of this State in the case of *Bice v. Home Insurance Co.*, (1921) 1 *W. W. Harr.* 294, 114 *A.* 211, 213. The pertinent provisions of the present statute were then in operation. The Court, after a careful consideration of the language employed, determined that the statute embraced partial as well as total losses. The Court stated in part—

"While there may be a difference of opinion as to whether the Legislature, in enacting the statute, contemplated a partial loss, there can be no doubt that the language employed is broad enough to comprehend it.

"The court are of the opinion that if there is an agreed value of the property insured, indorsed on the policy in accordance with the statute, such value must furnish the basis of settlement if the property shall be partially destroyed, and we reach this conclusion because of the apparent meaning of the statute, the general language employed therein, and also because of what we think was the main purpose of the Legislature in enacting the statute.

"The law requires that every policy issued to insure real property in this state shall have indorsed across its face the value of the property insured as agreed upon by the insurer and insured, and that this estimate shall be binding on both parties

as to value. It would be impossible to use more general language.

"But to make the application of the statute more certain in every case of loss, it is further provided that the section shall apply to all policies of insurance made or issued upon real property in this state.

"We think the Legislature intended to make every policy of insurance issued on real property a valued policy for all purposes, and prevent the issuance of an open policy in any case. We are convinced that such was the primary object of the law, and the reason for it, no doubt, was the desire to prevent disagreements and difficulties thereafter in fixing the value of property in the ascertainment of the amount of loss.

    \*       \*       \*       \*       \*       \*       \*

"The statute not only requires that the value of the property shall be agreed upon and indorsed upon the policy, but that such estimate shall be binding on both parties as to value. We construe this language to mean, that if any controversy shall arise between the insurer and insured involving the value to be placed on the property covered by the policy, the agreed value shall govern in ascertaining the amount of loss."

The foregoing interpretation of the statute embodies all of the decisional law in this State upon the question. The plaintiffs argue that the Court's inclusion of partial losses under the statute was a clear manifestation of error on their part. They insist that the decision in this respect should be overruled and an assertion here made that the statute applies only to total losses.

Upon a careful study of the language employed it seems quite clear to me that the statute is applicable in terms only to total losses. See *Columbia Law Review*, Volume 49, July, 1949. My feeling in this respect, however, makes little difference. The Legislature of this State on two occasions—1931 and 1945—reenacted in identical language all of the pertinent provisions of

the statute. The judicial interpretation of the language employed in 1921 to the effect that partial losses were embraced ·within the provisions of the statute has by reason of the subsequent re-enactments become indelibly penned into the statute with the same force and effect as if the substance thereof had been·expressly written therein. *Southerland On Statutory Construction*, Par. 333; *Koeppel v. E. I. Du Pont De Nemours & Co.*, (1937), 8 *W. W. Harr.* 542, 194 *A.* 847; *Coleman v. Coleman*, (1947) 94 *N. H.* 456, 55 *A.* 2d 471; in re *Bell's Estate*, (1940) 139 *Pa. Super.* 11, 10 *A.* 2d 835; *Susemiehl v. Red River Lumber Co.*, (1941) 376 *Ill.* 138, 33 *N. E.* 2d 211. If the interpretation of the statute as indicated is to be overruled or modified, the Supreme Court of this State is the proper tribunal to make the announcement.

Since partial losses are embraced within the provisions of the statute, what is the proper method of computing the insured's damages in such cases? The statute does not serve as an aid in any respect. Let us return again to the *Bice* case and see if the Court therein laid down a rule which will serve as a guide in this respect.

In that case each insurer (2) issued a policy in the amount of $3,000 on a store building under an agreed valuation of $8,000. The policies contained the 80% reduced rate contribution clause. A partial loss occurred. The parties stipulated the loss to be $2,609.66. Appraisers appointed under the policies found the sound value of the building before the fire to be $15,000. The insurers contended that the agreed value as set forth in the policies was not intended to apply in case of a partial loss, and since the loss was partial the agreed value of $8,000 was to be disregarded as respects the co-insurance clause; that since the insurance carried was $6,000 instead of the required 80% of $15,000, namely $12,000, they were liable for only $6,000/$12,000 or ½ of the partial loss, or $1,304.83 or $652.42 on each policy.

*Bice* on the other hand contended that the agreed value of

$8,000 should be controlling as establishing the value of the building before the fire; that under the 80% co-insurance clause he should have carried $6,400 in insurance; that since he car-' ried only $6,000 he was his own insurer to the extent of $400, and, since the loss was $2,609.66 he was entitled to receive under the policies 60/64 or 15/16 of the loss or the sum of $2,446.50 or $1,223.25 on each policy.

The Court found the question to be whether under the statute in case of partial loss the co-insurance clause in a valued policy supercedes the clause with respect to the agreed valuation, or whether the agreed valuation clause furnishes the figure by which settlement of the loss is to be finally determined.

The Court concluded that the $8,000 stated in the policy as the agreed value of the property insured was controlling as to the actual cash value of said property at the time when the loss occurred as provided by the reduced rate contribution clause set forth in said policy, and in accordance, gave judgment for Bice in the sum of $1,305.80 (being $1,223.25 with interest) as was agreed between the parties.

In the *Bice* case the damages were fixed by appraisers and agreed upon by the parties; consequently, the Court merely used the agreed valuation as set forth in the policies as an aid in determining the proportion of the insurer's liability in respect to said damages in the light of the 80% reduction rate insurance clauses in the policies. In the present case the policies do not provide for appraisers, and the parties have not agreed upon the amount of damages sustained. The *Bice* case, therefore, does not evidence a fixed rule under the statute for the measurement of damages in a partial loss case.

The defendants contend, since no agreement has been reached as to the amount of the damages sustained by them, that the proper method of computing the same is, first, to determine the difference in value of the insured property before and after the fire (open policy rule) or to determine the cost

of replacement or repair (replacement and repair cost rule), then, in the absence of a co-insurance clause, to allow the insured the damages arrived at up to the face value of the policy, or, if a co-insurance clause be present, then use the agreed valuation set forth in the policies for the purpose only of determining the value before the loss and as an aid in establishing the proportion of the insurer's liability of the amount of damages found to exist. In other words, under the defendants' theory the agreed valuation should be used only in connection with the co-insurance clause as indicated, and not as a basis for establishing the amount of damages sustained.

The plaintiffs on the other hand contend that the proper amount of damages sustained results from the application to the agreed value of all the buildings of the percentage which current repair costs of the damaged portion of said buildings bears to the current replacement costs of all buildings. They say the damages being thus ascertained, then the co-insurance clause should again be applied to the agreed valuation in order to determine the proportion of the insurer's liability of the damages found to exist. In other words, the agreed valuation under the plaintiffs' theory serves two purposes: (1) as an aid in establishing the amount of the damages sustained, and, (2), as an aid in establishing the proportion of the insurer's liability of said damages.

The statutes and the decisional law of other jurisdictions lend little, if any, aid. This is so because the statutes provide the manner of computing the damages in partial loss cases, or the Courts in construing the statutes have not found that the agreed valuation as stated in the policies fixes conclusively the value of the property before the loss.

It now becomes necessary in the absence of legislative direction to invoke a workable formula for computing damages in the present case consistent with the ruling in the *Bice* case that partial losses are embraced within the provisions of the statute,

and that the agreed valuation stated in the policy shall furnish the basis of settlement if the property be partially destroyed. In arriving at a formula we must keep in mind the Court's finding in that case to the effect that the Legislature intended in enacting the statute to make every policy of insurance issued on real property a valued policy for all purposes and prevent the issuance of an open policy in any case, and that the agreed value in all cases shall govern in ascertaining the amount of the loss.

The *Bice* decision stands in this State as authority for the assertion that the endorsement of the agreed value upon the face of the policy fixes conclusively the value of the property before the loss, and it is this value that must be used as the basis for settlement in all cases.

The fixation of the value of the property before the loss necessarily eliminates from consideration the application of the open policy rule or replacement and repair cost rule as contended for by the defendants in arriving at the amount of damages in a partial loss case. The plaintiffs' theory for computing the damages, while in accord with the decisional law in the field of Marine, Insurance, is not acceptable in the present case. No case has been cited sustaining such a method of computing damages in a partial loss case under a valued fire insurance policy.

Having eliminated the foregoing theories as advanced by the respective parties relating to the proper method of computing damages under our statute in a partial loss case, I find only one formula remaining to invoke; that is, to say that the agreed valuation as set forth in the policy fixes conclusively the value of the property before the loss. Such being ascertained, then the damages by reason of the loss would be the difference between the agreed valuation and the value of the salvage. Of these damages the insurer would be liable for such an amount as is properly reflected after applying the co-insurance clause to the agreed valuation. Thus, in the present case the plaintiffs would be liable to the defendants for an amount that would

represent the difference between $15,000, the agreed valuation, and the value of the salvage, up to the plaintiffs' liability under the policies after applying the 80% co-insurance clause to the agreed valuation of $15,000. See *Brunner v. Auto Ins. Co. of Hartford, Conn.*, 165 S. C. 421, 164 S. E. 134; 13 *Va. Law Review* 239, 240 (1927).

■ I think that the cost of replacement or repair, whichever the case may be, is a proper element to be considered, but in no manner controlling in arriving at the damages sustained.

If the foregoing rule seems harsh or unjust in any respect whatsoever, a readjustment of agreed valuations might be the answer; otherwise, the problem is one for legislative decision.

Under the state of the pleadings and the affidavit filed the motions of the respective parties for summary judgment must be denied.

A pre-trial conference will be ordered and the case marked for trial in accordance with my rulings as indicated herein.