AMERICAN INSURANCE COMPANY, a Corporation of the State of New Jersey,

THE AUTOMOBILE INSURANCE COMPANY, a Corporation of the State of Connecticut,

THE CAMDEN FIRE INSURANCE ASSOCIATION, a Corporation of the State of New Jersey,

THE CONTINENTAL INSURANCE COMPANY, a Corporation of the State of New York, and

NORTHERN INSURANCE COMPANY, a Corporation of the State of New York, Plaintiffs below, Appellants,

v.

GUISEPPI IACONI and ANTONIA IACONI, Defendants below, Appellees.

GUISEPPI IACONI and ANTONIA IACONI, Defendants below, Appellants,

v.

AMERICAN INSURANCE COMPANY, a Corporation of the State of New Jersey, et al., Plaintiffs below, Appellees.

(*May* 22, 1952.)

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, J. J., sitting.

*William E. Taylor, Jr.,* and *Gerard P. Kavanaugh* for appellants, plaintiffs below.

*Robert C. Barab* and *Joseph A. L. Errigo* for appellees, defendants below.

Supreme Court, Nos. 1 and 6, November Session, 1951.

SOUTHERLAND, C. J.:

The essential question in this case is whether the valued policy law of Delaware relating to policies of fire insurance on real estate is applicable to cases of partial loss.

The facts are these:

On or about October 27, 1946, each of the five appellant insurance companies (plaintiffs below, hereinafter called "the companies"), issued to the appellees (defendants below, hereinafter called "the insured") a policy of fire insurance upon certain buildings used as mushroom houses, dwelling quarters, manure sheds and packing house, situated in Mill Creek Hundred, New Castle County, Delaware. Each policy was in the amount of $12,000 on a regular Middle Department form (No. 4), and each policy covered *pro rata* one-fifth of the total risk. As required by the Delaware statutes governing policies of fire insurance on real estate, Vol. 45, *Laws of Delaware*, Ch. 81, hereinafter called "the valued policy law", each policy was stamped with the following endorsement:

"It is agreed between Insurer and Insured that the value of the real property insured is the sum of $15,000.00."

The provisions of this statute are set forth in the margin.[1]

Each policy contained the following provision:

"Co-insurance clause: In consideration of the reduced rate and (or) form under which this policy is written, it is expressly stipulated and made a condition of this contract that in the event of loss this company shall be liable for no greater proportion thereof than the amount hereby insured bears to 80% of the actual cash value of the property

---

[1] *Valued Policies; Fire; Tornado; Lightning; Liability Under; Entry Thereon; to What Policies Applicable; Judgment Thereon:*—(a) Whenever any policy of insurance shall be issued to insure any real property in this State against loss by fire, tornado, or lightning, and the property insured shall be wholly destroyed without criminal fault on the part of the insured, or his assigns, the amount of the insurance stated in such policy (except policies with blanket coverage provided for in Subparagraph (b) hereof) shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages, subject to the proviso herein; and every such policy, whether hereafter issued or renewed, shall have endorsed across the face of it the following: 'It is agreed between insurer and insured that the value of the real property insured is the sum of $———;' and this estimate shall be binding on both parties as to value; provided, however, that nothing herein contained shall, in case of loss, prevent the company insuring from adjusting the loss by replacing the property destroyed. And in case any owner shall effect any subsequent insurance on the same property, upon any larger value than so agreed, all such insurance, that then existing as well as that subsequently obtained, shall become void.

"(b) Nothing in this Act contained shall be construed as prohibiting insurers from issuing policies with blanket coverage on two or more separate buildings or units of real property or policies covering real and personal property; provided, however, that when insurance is written under a blanket item covering real and personal property or covering two or more separate buildings or units of real property, a single total value shall be agreed upon between the insurer and insured as to the real property insured, and such agreed value shall be endorsed across the face of any such policy as provided in Subparagraph (a) of this Section.

"(c) This Section shall apply to all policies of insurance made or issued upon real property in this State, and also to the renewal which shall be made of all policies issued in this State, and the contracts made by policies and renewals shall be construed to be contracts made under the laws of this State.

"The Court upon rendering judgment against any insurance company upon any such policy of insurance shall allow the plaintiff a reasonable sum as attorney's fee to be taxed as part of the costs."

described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

On or about April 18, 1948, a fire occurred on the insured's premises and the buildings insured by the policies were partially but not totally destroyed. A controversy ensued between the companies and the insured touching the proper method of adjusting the loss in the light of the provisions of the valued policy law and the provisions of the policies. Thereafter the five companies filed in the court below a complaint seeking a declaratory judgment determining the rights of the parties, and praying for certain relief. The insured answered and both sides filed motions for summary judgment in accordance with their respective contentions. It is alleged in an affidavit filed by the insured that the damage to the buildings exceeds $15,000.

From the pleadings and the opinion of the court below it appears that the issues made by the parties are as follows:

First. The companies contend that the provisions of the valued policy law are not applicable to insured's claim because that law deals with total losses only and the insured's loss is a partial one; and hence that the amount of the insured's loss must be determined in accordance with the provisions of the policy and particularly the co-insurance clause thereof.

The insured contends that the valued policy law is in one respect applicable to partial as well as total losses, that is, that the agreed value of the property stated in the policy fixes the value of the property at the time of the loss for the purpose of determining to what extent the insured is a co-insurer, and since in this case the amount of insurance carried ($12,000) equals 80% of the agreed value, he is not a co-insurer to any extent, and is entitled to full recovery of his damage up to the amount of the insurance carried.

Second. The companies further contend that if the agreed value clause be held to apply to partial losses in one respect,

viz., the application of the co-insurance clause, it must also apply in other respects, that is, it must supply the basis for determining insured's measure of recovery; and further contend that such measure of recovery is that proportion of the agreed value which is represented by the percentage of actual destruction, which percentage (say the companies) should be held to be that proportion of the agreed value which the current cost of repairing the damage bears to the current replacement cost of all the insured buildings.[2]

As to this the insured contends that the "percentage rule" of recovery is a rule recognized only in the maritime law of insurance and that its application to fire insurance losses would be in derogation of the common law principles of insurance and wholly unjustified.

The court below, feeling bound by a prior decision of the Superior Court construing the valued policy law, entered a judgment denying both motions for summary judgment and declaring the rights of the parties to be as follows:

"1. The provisions of *Laws of Delaware*, 1945, Vol. 45, Chap. 81, P. 328, are applicable to the defendants' claim herein.

"2. Plaintiffs' liability to defendants under defendants' policies of insurance is for an amount representing the difference between $15,000, the agreed valuation, and the value of the salvage, said amount not to exceed the sum of $12,000."

From this judgment both the companies and the insured have appealed.

The basic issue between the parties, viz., whether the valued policy law is applicable to partial losses, turns primarily upon the intent of the statute, as disclosed by its language. The stat-

---

[2]This appears to embody one particular method of determining the proportion of damage from the fire to sound value just before the fire.

ute now in force has its origin in the Act of the General Assembly of March 29, 1889, Vol. 18 *Laws of Del.*, Ch. 695, which reads as follows:

"Section 1. Whenever any policy of insurance shall be issued to insure any real property in this State against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed without criminal fault on the part of the insured, or his assigns, the amount of the insurance stated in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages; and every such policy, whether hereafter issued or renewed, shall have endorsed across the face of it the following: 'It is agreed between insurer and insured that the value of the insured property is of the sum of $————;' and this estimate shall be binding on both parties as to value, and in case any owner shall effect any subsequent insurance upon any larger value than so agreed, all insurance as well as that then existing as that subsequently obtained shall become void.

"Section 2. This act shall apply to all policies of insurance hereafter made or issued upon real property in this State, and also to the renewal which shall hereafter be made, of all policies heretofore issued in this State, and the contracts made by such policies and renewals shall be construed to be contracts made under the laws of this State.

"Section 3. The court upon rendering judgment against any insurance company upon any such policy of insurance, shall allow the plaintiff a reasonable sum as an attorney's fee to be taxed as part of the costs.

"Section 4. This bill shall not take effect until on and after January 1st, (1890), eighteen hundred and ninety."

It is first to be observed that the introductory clauses of the law appear to limit its application to the case of total losses only. In case of a total loss the true amount thereof and the

measure of damages are conclusively taken to be the amount of insurance. The statute says nothing about partial losses, nor does it attempt to fix the measure of damages therefor. Valued policy laws governing fire policies on real estate are in force in a number of states. Some of them have specifically dealt with the subject of partial losses in various ways, e.g., by providing that in case of loss the full amount thereof shall be paid, or an amount sufficient to repair the damage, or a proportionate amount of the value of the property insured. See *Oppenheim v. Fireman's Fund Ins. Co.*, 119 *Minn.* 417, 138 *N. W.* 777; *Simon v. Queen Ins. Co.*, 120 *La.* 477, 45 *So.* 396; *Columbia Real Estate & Trust Co. v. Royal Exch. Assurance*, 132 *S. C.* 427, 128 *S. E.* 865; *Insurance Laws of Florida, F. S. A. Ch.* 631, §§ 631.04 and 631.05; *Missouri Rev., Stat.* 1939, *Sec.* 5930, *V. A. M. S.* § 379.140; *Marr's Rev. Statutes of Louisiana* 1915, *Sec.* 3757, *L S A—R. S.* 22:695; *New Hampshire Laws of* 1885, *Ch.* 93, *Sec.* 2. In other states the statute, like ours, is silent upon the matter, e.g., *Wisconsin Statutes, Sec.* 203.21; *Ohio Insurance Laws, Throckmorton's Code* 1940, *Sec.* 9583; *Insurance Laws of Nebraska, R. S.* 1943, *Sec.* 44-380. For a recent resumé of the statutes see the discussion of partial losses under valued policy laws in 49 *Columbia Law Review, pp.* 827-828. In states with statutes providing no rule of recovery in case of partial losses, it has been held either expressly or impliedly that the valued policy law has no application. *Lancashire Ins. Co. v. Bush*, 60 *Neb.* 116, 82 *N. W.* 313; *Voges v. Mechanics' Ins. Co. of Phila.*, 119 *Neb.* 533, 230 *N. W.* 105; *Third Nat'l Bank v. American Equit. Ins. Co.*, 27 *Tenn. App.* 249, 178 *S. W.* 2d 915; *Automobile Ins. Co. of Hartford v. Buie, Tex. Civ. App.*, 252 *S. W.* 295; *Eureka Fire & Marine Ins. Co. v. Gray*, 14 *Ohio Cir. Dec.* 269, 2 *Ohio Cir. Ct. R., N. S.*, 265; *affirmed* 69 *Ohio St.* 542, 70 *N. E.* 1119.

That the statute was not designed to deal with the matter of partial losses is indicated by the amendment of 1893, Vol. 19 *Laws of Del.* Ch. 696, which reads as follows:

"That Section I of Chapter 695, Volume 18, of the *Laws of Delaware*, be and the same is hereby amended by

inserting between the word 'damages' and the word 'and,' in the eighth line thereof, the words 'subject to the proviso herein'; and that the said section be and the same is hereby further amended by inserting between the word 'value', in the twelfth line, and the word 'and' in the thirteenth line thereof, the following: *'Provided however* that nothing herein contained shall, in case of loss, prevent the company insuring from adjusting the loss by replacing the property destroyed.' "

Fire policies usually contain a clause permitting the insurer at his option to repair, rebuild or replace the property lost or damaged.[3] Clearly, the purpose of the amendatory statute was to accord such an option to the insurer in case of total loss only, since the right given is to adjust the loss "by replacing the property destroyed." Significantly, no mention is made of "repair" or of "property damaged", and it is a fair inference that the statute was not deemed to apply to partial losses, and that such losses were to be adjusted under applicable provisions of the policy.

The foregoing considerations point strongly to the conclusion that the Delaware valued policy law was not intended to apply to partial losses.

We turn now to the argument to the contrary advanced by the insured.

It is conceded that if the first two clauses of Section 1 of the statute down to the semicolon after the word "herein" stood alone, the law would not reach partial losses. However, the insured points to the remaining provisions of Section 1 dealing with agreed value and builds upon them the following argument:

Since the fixation of "agreed value", which may and often does exceed the amount of insurance, can have no bearing on

---

[3] *Cf. "Principles of the New York Standard Fire Insurance Policy", A. J. Goldin (Phila. 1938), Ch. 47.*

total losses, its purpose must be found in establishing an agreed value for the purpose of determining to what extent the insured is a co-insurer. Without the agreed value, the insured could not know whether he is a co-insurer, and if so, to what extent he is such. The statute provides a means by which the insured may, at the time of effecting insurance, know with precision the extent of the risk he himself is carrying. So runs the argument. Let us examine it.

The provisions for agreed value as written in the original act of 1889 read as follows:

"and every such policy, whether hereafter issued or renewed, shall have endorsed across the face of it the following: 'It is agreed between insurer and insured that the value of the insured property is of the sum of $——;' and this estimate shall be binding on both parties as to value, and in case any owner shall effect any subsequent insurance upon any larger value than so agreed, all insurance as well as that then existing as that subsequently obtained shall become void."

■ It is clear that the first part of these provisions requiring the endorsement of an agreed value and declaring its binding effect, is directly related to the second part providing for the avoidance of all insurance on the property in case other insurance is thereafter effected upon a larger value. The two parts belong together and must be construed together. The proviso of the 1893 amendment relating to replacement was (somewhat ineptly) inserted after the word "value", thus breaking the continuity of the thought; but we cannot think that this fact, or the subsequent codification of the law (hereinafter referred to), has any bearing on the present question. The primary purpose of these provisions is to prevent over-insurance. They are provisions essentially designed to guard against a temptation to convert a contract of indemnity into one of profit. It is of some interest to note that the report of the Insurance Com-

missioner of February 20, 1889, to the General Assembly[4] contains adverse comments upon a bill then before it embodying a valued policy law and opposes its enactment on the ground that such laws encourage incendiarism and fraud. Such criticism has been frequently made, and whether or not it be sound (a matter with which we are not concerned) it seems a fair inference that the agreed value provisions of the Delaware law were designed to express a public policy of the General Assembly against over-insurance, and that such was their primary purpose. Cf. *Thurber v. Royal Ins. Co.*, 1 *Marv.* 251, 40 *A.* 1111.

Upon the question of the scope and purpose of the agreed value clause, insured advances the two arguments above noted.

First, it is urged that because agreed value "has no bearing" on a total loss, i.e., is irrelevant to the measure of damages which in such a case is fixed by the statute, there is an inference that it must fix the basis of settlement in case of partial loss. On the face of the statute this is a *non sequitur*, since, as we have seen, the primary purpose of the clause is not related to the measure of damages in either case.

Second, insured says that the purpose of the statute is to make certain, before the occurrence of a loss, the extent to which the insured is a co-insurer. By applying agreed value to the policy requirement he can know with precision, says insured, the extent of the risk he is bearing himself, if any. This suggestion, we note, is wholly inconsistent with the principles of co-insurance, which required the determination of sound value at the time of the loss. *Aldrich v. Great American Ins. Co.*, 195 *App. Div.* 174, 186 *N. Y. S.* 569, 570-571. But if the statute intends such a result, that is an end of the matter.

Accordingly, we inquire: Does the agreed value clause, in addition to its primary purpose, have a secondary purpose or effect? In addition to embodying a provision against over-insur-

---

[4]*Journal of the House of Representatives*, 1889, *Appendix G, p.* 259; *pp.* 263-267.

ance, for the protection of the public and of the insurer, does it also undertake to deal with the subject of co-insurance in case of partial loss?[5] Admittedly it does not prescribe any measure of damages.

The insured's contention is supported by the decision of the Superior Court of Kent County in the case of *Bice v. Home Ins. Co.*, 1 *W. W. Harr.* (31 *Del.*) 294, 114 *A.* 211. In that case, which involved a partial loss by fire to a building, the policy contained the reduced rate 80% co-insurance clause, and was endorsed with an agreed value of $8,000. The total insurance was $6,000, the sound value $15,000, and the loss (fixed by appraisers) $2,609.66.

As hereinafter more fully developed, the court appears to have viewed the case as one presenting a conflict between the agreed valuation clause of the statute and the co-insurance clause of the policy. Expressing the view that it was the intent of the Legislature to make every policy of insurance on real property a valued policy for all purposes and prevent the issuance of an open policy in any case, 1 *W. W. Harr.* (31 *Del.*) 299, 114 *A.* 211, the court held that the agreed value must furnish the basis of settlement in case of a partial loss. This view is reiterated several times in the opinion. 1 *W. W. Harr.* (31 *Del.*) 299, 302, 114 *A.* 211.

The court accordingly held that in determining the extent to which the insured was a co-insurer agreed value controlled. Pursuant to the stipulations in the case stated, the court then awarded him 60/64 of his ascertained damage.

Notwithstanding one remark of the court respecting the determination of a partial loss by estimating the cost of repair (a circumstance hereinafter noticed), it is fair to say that the *ratio decidendi* of the case is the conclusion of the court that the stat-

---

[5]In the case of a total loss the co-insurance clause is necessarily overridden, since the statute (except as to blanket policies) determines the amount of the recovery.

ute intended that agreed value should, in cases of partial loss, "furnish the basis" upon which the loss is to be adjusted. The court below so interpreted the opinion, and we agree.[6]

But if this holding of the *Bice* case is to be accepted, and the agreed value is to be used as the basis upon which the loss is to be adjusted, how is it to be done? Two methods of giving effect to the agreed value in adjusting partial losses have been suggested.

First, the "salvage" rule, adopted by the court below and apparently approved in *Bruner v. Automobile Ins. Co. of Hartford*, 165 *S. C.* 421, 164 *S. E.* 134. This method requires that from the agreed value there be subtracted the value of the property remaining after the fire. The difference is the insured's damage.

Only a moment's reflection is needed to see that such a rule would be highly artificial and would lead to grossly unfair results. If, in case of partial loss, the insured's property should increase in value to a point where the value of the property remaining exceeded agreed value, he would recover nothing. In cases of very small losses the rule would obviously be unworkable. Such a rule for determining the amount of a partial loss in maritime insurance law under a valued policy on cargo was suggested in the case of *Lewis v. Rucker*, 2 *Burr.* 1167, 97 *Eng. Rep.* 769, 14 *Eng. Rul. Cas.* 215, and was rejected by Lord Mansfield with the terse comment:

---

[6]Compare the comment in the note in 13 *Virginia Law Review*, pp. 239-240 *("Insurance—Valued Policy Laws—Measure of Damages for Partial Loss")*:

"Some of the Valued Policy statutes specifically stipulate, or are so construed, as to fix conclusively the value of the insured property before the loss at the agreed valuation, though the loss be only partial. This results in making the measure of damages for a partial loss the difference between the agreed valuation and the value of the salvage. *Bice [sic] v. Home Ins. Co.*, 1921, [1 *W. W. Harr.* (31 *Del.*) 294] 114 *A.* 211."

And see also the similar comment in 29 *Columbia Law Review* (*Bonbright and Katz, "Valuation of Property to Measure Fire Insurance Losses"*), p. 859, note 3.

"It is impossible that this should be the rule. It would involve the underwriter in the rise or fall of the market: it would subject him in some cases, to pay vastly more than the loss; in others it would deprive the insured of any satisfaction, though there was a loss." (2 *Burr.* 1172.)

In this Court all parties concur in holding the salvage rule to be unsound.

For the foregoing reasons, we decline to adopt it.

Second, the "percentage rule", a rule that the measure of the insured's recovery is that proportion of agreed value which the amount of insured's loss bears to the sound value of the insured property immediately before the fire. It is strongly urged by the companies that if the basic holding of the *Bice* case is sound, the insured's recovery must be related to the agreed value and for that purpose the "percentage rule" should be applied (the required proportion, however, to be based on current repair cost and current reproduction cost). Arguing that the concept of the valued policy derives from maritime insurance law, the companies invoke the settled rule of maritime insurance for the measure of recovery on valued policies on cargo, announced in 1761 by Lord Mansfield in *Lewis v. Rucker, supra,* and since followed in this country. *Gulf Refining Co. v. Atlantic Mut. Ins. Co.*, 279 *U. S.* 708, 49 *S. Ct.* 439, 73 *L. Ed.* 914. Apparently it has recently been applied in England to a valued policy of fire insurance. *Elcock v. Thomson* (1949), 2 *K. B.* 755.

The rule of *Lewis v. Rucker* is in effect the application to valued policies on cargo of the general rule that in marine insurance the insurer may rely on sound value in order to establish the extent to which the insured is a co-insurer. See *Gulf Refining Co. v. Atlantic Mut. Ins. Co., supra.* But the matter of co-insurance[7] under fire policies is in this country governed by

---

[7]In this opinion the word "co-insurance" is used in its narrow sense to refer to the situation where the insured carries some part of his own risk and bears some part of the loss. See the article *"Co-Insurance"*, Robert Riegel, *Journal of American Insurance*, June, 1945.

specific provisions of the policies. Thus the policies in suit contain the "reduced rate" clause, and this or similar "average" or co-insurance clauses appear to be in general use in large sections of the country.[8] We see no reason to reach into the field of maritime insurance for a rule upon a subject already dealt with in the standard fire policies in use in this country. No case in this country sanctioning such an innovation in fire insurance law is cited to us. Approval of the companies' contention upon this point would entail anomalous results. First, recoveries, on *all* policies on real estate would, in effect, be subject to a rule of co-insurance, although, as is admitted, the co-insurance clause in this country is seldom used in insuring several large classes of risks, including dwellings and farm buildings.[9] Why should there be imposed by judicial construction upon owners of such properties in this State a co-insurance requirement which the fire insurance companies themselves have not thought fit to impose generally? Second, those insured under policies containing the clause would be subjected to two rules of co-insurance, that expressly contained in the standard policies (to be determined by a comparison of total insurance with the required percentage of agreed value) and a "percentage rule" to be judicially evolved. The recovery might be twice diminished. These consequences would be highly unreasonable.

This contention of the companies is not acceptable.

The two methods just discussed of using agreed value to furnish the basis for adjusting partial losses are the only ones suggested to us. Neither is satisfactory.

Now, it is to be noted that the insured agrees with this conclusion—a concession which, it seems to us, seriously weakens the contention that agreed value is to be used to furnish the ba-

---

[8] "The Co-Insurance Clause", W. J. Nichols, in "The Fire Insurance Contract", Indianapolis, 1922; "Coinsurance, Contribution and Average Clauses", Prentiss B. Reed, New York.

[9] Cf. "The Philosophy of Fire Insurance", A. F. Dean, Vol. I, p. 129, Chicago, 1925.

sis for adjusting partial losses. The adjustment or settlement of the loss certainly entails the fixation of a measure of damages.[10] That measure, says insured, is the rule applicable to an "open" or non-valued policy, i.e., the recovery of the full amount of damages up to the total amount of insurance carried. 29 *Am. Jur., Insurance,* Sec. 1176. But with such a measure of recovery agreed value has nothing to do. Insured's contention in effect comes to this: In adjusting a partial loss to a building under a valued policy, the policy is to be treated as a valued policy in one feature of the adjustment, viz., the application of the co-insurance clause, and as a non-valued or open policy in another, that is, in fixing the insured's measure of damages. In support of this conclusion the insured relies upon the *Bice* case which, notwithstanding its broad holding (several times repeated) that agreed value must "furnish the basis" for adjusting the loss, contains a statement by the court that the insured's loss is to be fixed "by estimating what it will cost to repair or replace the property destroyed." 1 *W. W. Harr.* (31 *Del.*) 300, 114 *A.* 213. That such was the result of the decision appears to be true. Insured's case therefore turns upon the soundness of the *Bice* decision, which, though holding that agreed value must furnish the basis for loss adjustment, actually applied the open policy rule in measuring damages.

Before examining that case in detail, however, we inquire whether the construction of our valued policy statute urged by insured is, in principle, a reasonable one, that is, whether the statute indicates a secondary purpose or intent that, in the adjustment of a partial loss, the agreed value shall fix the value of the insured property for the sole purpose of applying the requirements of the co-insurance clause.

---

[10]The adjustment of the loss is the settling and ascertaining of the amount of the indemnity which the insured, after all allowances and deductions have been made, is entitled to receive, and the proportion of which each underwriter is liable to pay. *Fame Ins. Co. v. Norris,* 18 *Ill. App.* 570; *Pennsylvania Fire Ins. Co. v. Draper,* 187 *Ala.* 103, 65 *So.* 923, 927. It contemplates more than a mere computation of damage. *Commonwealth Ins. Co. v. Solomon,* 2 *W. W. Harr.* (32 *Del.*) 98, 106, 119 *A.* 850.

We observe at once that the statute nowhere speaks of co-insurance. That subject has long been an important one in the field of fire insurance.[11] It is and has been dealt with directly in the laws of many states in various ways, i. e., by prohibition[12] or special regulation,[13] as a subject requiring specific legislation if the provisions of the standard policies relating thereto are to be modified or overridden, since in the absence of specific statutory prohibition or regulation they are held to be valid and enforceable. *Appleman, Insurance,* Sec. 3866; *Couch Cyc. Ins. Law,* Sec. 1062; *Aldrich v. Great American Ins. Co.,* 195 *App. Div.* 174, 186 *N. Y. S.* 569 (not inconsistent with statutory New York standard policy); *Simon v. Queen Ins. Co.,* 120 *La.* 477, 45 *So.* 396 (not inconsistent with valued policy law). It is difficult to believe that if the General Assembly had intended to deal with this important subject, it would have chosen such an indirect method for the purpose. We have above stated our view that the primary purpose and intent of the agreed value clause is the prevention of over-insurance; and it seems altogether unlikely that the clause is intended to embody a secondary purpose to establish a regulation of co-insurance, by way of implication only, when dealing with an unrelated subject. Indeed, in one view, such a secondary purpose might be said to be inconsistent with the primary purpose, since the effect of the agreed value in practice, when applied to the co-insurance clause, tends to encourage under-insurance, which, like over-insurance, is sometimes regarded as an evil.[14]

These considerations suggest the conclusion that the result reached in the *Bice* case, viz., that the agreed value endorsed

---

[11]See *Sunderlin on Fire Insurance, Lecture VI, "Co-Insurance", pp.* 36-43; *A. F. Dean, op. cit.; Vol. I, Ch.* 19; *Report of the Joint Committee of the Senate and Assembly of the State of New York, N. Y. Assembly Documents,* 1911, *Vol.* 20, *No.* 30, *Pt.* 1, *pp.* 82-91, *"Co-Insurance."*

[12]See *"Valuation, etc., under Fire Insurance Policies",* 49 *Columbia Law Review* (above cited), *p.* 830, *note* 82, for a list of citations to such statutes.

[13]E. g., *Insurance Laws of the State of Florida, F. S. A.* § 631.12; *Kentucky Revised Statutes, Article Twenty-five, Sec.* 304.905 (2); 1 *Minn. Stat.* 1945, *Sec.* 65.05, *M. S. A.*

[14]*Sunderlin on Fire Insurance, Lecture VII, p.* 3.

on the policy controls in applying the co-insurance clause and hence overrides the contract provision for the use of sound value, may be erroneous. We now examine the opinion in detail.

1. At the outset we note that the statement by the court of the question presented is as follows:

"Whether, under the Delaware law, in case of partial loss, the coinsurance clause in a valued policy supersedes the clause with respect to agreed valuation, or whether the agreed valuation clause furnishes the figure by which settlement of the loss is to be finally determined." 1 *W. W. Harr.* (31 *Del.*) 296, 114 *A.* 211.

As thus stated, the question embodies a tacit assumption that there is a conflict between the agreed value clause and the co-insurance clause of the policy. But the very question to be decided is whether there is such a conflict, i.e., whether the statute or any of its provisions is concerned with partial losses in any respect.

2. Dealing with the construction of the statute, the court says:

"While there may be a difference of opinion as to whether the Legislature, in enacting the statute, contemplated a partial loss, there can be no doubt that the language employed is broad enough to comprehend it." 1 *W. W. Harr.* (31 *Del.*) 298, 114 *A.* 213.

Our reading of the statute leads to a contrary conclusion. There is no word in the statute about partial losses, and no language even remotely suggesting any intent to prescribe a measure of damages in such cases, such as is prescribed in the case of total losses. The opinion quotes no language of the statute in support of this statement, and we can find none.

3. Referring to the statutory requirement of endorsement of the agreed value and its binding effect upon the insurer and insured, the court says:

"But to make the application of the statute more certain in every case of loss, it is further provided that the section shall apply to all policies of insurance made or issued upon real property in this state." 1 *W. W. Harr.* (31 *Del.*) 299, 114 *A.* 213.

The fact that a statute requiring an endorsement of agreed value of insured property applies to all *policies* on such property raises no inference that it applies to all *losses*. The conclusion is a *non sequitur*.

4. Dealing with the question of the binding effect of agreed value upon both parties, the court concludes that to accept the insurer's contention that the statute does not apply to partial losses would mean "that the agreed value shall be binding on the insured but not on the insurer", and hence lack of mutuality would result. This conclusion appears to be founded on the following reasoning:

"The insured cannot receive more than the agreed value in any case because the insurance stated in the policy never exceeds it, but the insurer [it is contended] may disregard such value in case of partial loss and settle on a different basis." 1 *W. W. Harr.* (31 *Del.*) 300, 114 *A.* 213.

It is difficult to see how the fact that the insurer cannot be liable for more than the amount he has contracted to pay can lead to lack of mutuality. If the agreed value furnishes the basis for adjusting a partial loss it is binding on both parties; if it has no bearing on the adjustment of such a loss it is binding on neither. In either case there would be no lack of mutuality. The question is, has it anything to do with partial losses?

5. At four places in the opinion the court in effect states that the agreed value furnishes the basis for the adjustment of the loss. We quote:

"The court are of the opinion that if there is an agreed value of the property insured, indorsed on the policy in ac-

cordance with the statute, such value must furnish the basis of settlement if the property shall be partially destroyed." 1*W. W. Harr.* (31 *Del.*) 299, 114 *A.* 213.

Again:

"The agreed value in the policy is designed, not to fix the value of a part but to furnish the basis upon which settlement shall be made in case of any loss." 1 *W. W. Harr.* (31 *Del.*) 299, 114 *A.* 213.

And again:

"If any controversy shall arise between the insurer and insured involving the value to be placed on the property covered by the policy, the agreed value shall govern in ascertaining the amount of loss." 1 *W. W. Harr.* (31 *Del.*) 302, 114 *A.* 214.

The court also says:

"We think the Legislature intended to make every policy of insurance issued on real property a valued policy for all purposes, *and prevent the issuance of an open policy in any case.* We are convinced that such was the primary object of the law; and the reason for it, no doubt, was the desire to prevent disagreements and difficulties thereafter *in fixing the value of property in the ascertainment of the amount of loss.*" 1 *W. W. Harr.* (31 *Del.*) 299, 114 *A.* 213. Emphasis supplied.

Notwithstanding these unequivocal statements that the agreed value must furnish the basis for adjusting the loss, the court also said, dealing with the policy provision for appraisement:

"Even though the agreed value governs in case of partial loss, there would still be reason for the appointment of appraisers in case of disagreement as to the loss. Their duty is not to fix the value of the property destroyed, but the amount of the loss the insured has sustained; *and this is*

*done, we apprehend, by estimating what it will cost to re-pair or replace the property destroyed."* 1 *W. W. Harr.* (31 *Del.*) 299-300, 114 *A.* 213. Emphasis supplied.

If this statement meant only that the amount of the damage is to be ascertained by appraisement, and the insured's recoverable loss is to be determined by relating the amount of damage to agreed value, it would be consistent with the rest of the opinion above quoted. But it cannot mean that, since the court made no attempt to relate it to agreed value—presumably because the case stated fixed the amount of the judgment to be entered. Hence the court appears to have applied the cost of repair as the measure of damages—a measure appropriate to an open policy. The result was to deny that which had just before been asserted, viz.: that the legislative intent was to "prevent the issuance of an open policy in any case."

This difficulty was recognized by the court below, which, feeling itself bound by the principal holding of the *Bice* case, held that the application of the agreed value to the adjustment of the loss eliminated the ordinary open policy rule for measuring the insured's recovery, and that another measure of recovery must necessarily be found. See the opinion below, 82 *A.* 2d 718, 725.

6. A remarkable omission in the opinion is the failure to notice the language of the last clause of the statute relating to the effect of over-insurance. The court stated flatly:

"It is impossible for the court to see any sound reason for this agreed valuation unless it is intended to furnish the basis for settlement if there shall be a partial loss." 1 *W. W. Harr.* (31 *Del.*) 302, 114 *A.* 214.

We cannot agree. We find a sound and sufficient reason for the agreed value clause read in its entirety, viz., a purpose to prevent over-insurance. Perhaps the court's oversight may be attributed to the insertion of the replacement proviso after the word "value", to which we have referred, and the garbled version of Section 1 of the Statute in the Code of 1915, Sec. 599,

which is quoted in the opinion. 1 *W. W. Harr.* (31 *Del.*) 298, 114 *A.* 211.

7. The only authority cited in support of the court's conclusion is the case of *International Navigation Co. v. Atlantic Mut. Ins. Co., D. C.,* 100 *F.* 304. This is a case dealing with the rule of recovery under marine valued policies in case of partial loss to hull. This "peculiar rule" is an exception to the usual rule in maritime law that the insured is a co-insurer. *Aetna Ins. Co. v. United Fruit Co.,* 304 *U. S.* 430, 58 *S. Ct.* 959, 82 *L. Ed.* 1443; *Gulf Refining Co. v. Atlantic Mut. Ins. Co., supra.* For the reasons already given, we think it unsound, in dealing with the co-insurance clause of the American fire policies, to apply judicially evolved rules of marine insurance.

Finally, the opinion evinces no appreciation of the importance of co-insurance in fire underwriting, and hence fails to notice the improbability of the General Assembly's having dealt with it in an indirect or roundabout fashion.

We have examined the *Bice* case at length because of the importance of the decision and because it has apparently stood unchallenged for thirty years. We find its reasoning to be unsound and must conclude that it was wrongly decided. We think its basic fallacy stems from the holding of the court (tacitly assumed in its statement of the question) that the agreed value of the property fixed at the time of the issuance of the policy must be in some way related to the adjustment of the loss. We think agreed value has nothing to do with the adjustment of the loss, except to defeat any recovery in the event the statutory limitation of insurance has been transgressed. As we have shown, any attempt to measure the insured's recovery by relating the loss adjustment to agreed value is impracticable unless the policy is to be treated as a valued policy for one purpose and an open policy for another purpose. Such a construction would produce a hybrid contract, consistent neither with the theory of a valued policy nor with the basic concept of indemnity underlying all fire insurance. Moreover, the' result is palpably un-

fair, since the insured is permitted to accept the benefits of an open policy in respect of one aspect of the loss adjustment, i.e., the measure of damages, and cast off one of its burdens—the policy requirement in respect of adequate insurance. No language in the valued policy law justifies a belief that the General Assembly intended to bring about such a result.

It is apparent that any attempt to follow the doctrine of the *Bice* case in any respect leads to serious difficulties. All of these difficulties are avoided if the statute before us is enforced as written, by carrying out its clear and sufficient purpose—that of providing an obstacle to over-insurance—and forgoing any attempt to stretch its meaning to reach a special situation not covered by its plain language.

But before concluding that the *Bice* case should be overruled, we must consider the bearing of two rules urged by the insured as reasons why, even though the decision be wrong, it should be followed.

Insured invokes first the rule of *stare decisis,* and cites the case of *Daniels v. State,* 2 *Penn.* 586, 48 *A.* 196, 54 *L. R. A.* 286, in which it is said that the rule "seems to apply with peculiar force to decisions which have determined questions respecting real property and vested rights, and it embraces as well those matters of general commercial importance which tend to influence future business transactions." 2 *Penn.* 592, 48 *A.* 198. This comment (in a criminal case) appears to be based upon the opinion of the Supreme Court in *Truxton v. Fait & Slagle Co.,* 1 *Penn.* 483, 42 *A.* 431. In that case a majority of the judges of the Superior Court had overruled a prior decision of that court, *England v. Forbes,* 7 *Houst.* 301, 31 *A.* 895, on a point of commercial law involving the rights of attachment creditors against property in the possession of a vendee who had obtained it by fraud from the vendor. The case was taken to the Supreme Court, and the rule of *stare decisis* strongly urged. The opinion of that court, delivered by Judge Ridgely (judge *ad litem*), is a thorough and carefully considered discussion of the

rule. It is unnecessary to quote from it at length, since it is entirely clear that the court holds that *stare decisis* has little, if any, application to a case where an appellate court is examining a decision of a lower court. Thus the opinion on *stare decisis* concludes as follows:

> "We think, therefore, that there was no error in the court below in reversing the ruling in the case of *England v. Forbes* in relation to the rights of execution creditors whose debts were contracted prior to the alleged fraudulent sale. If we were to hold otherwise, and to reverse the court on this ground, and remand the case for a new trial, the court, on such new trial, would be bound by our decision to lay down the law as ruled in the case of *England v. Forbes;* and if, upon such ruling, the plaintiff should except, and bring the case before this court again, we should be bound to reverse the court, for the error in the ruling, and for doing what we had virtually ordered them to do. The folly of such a decision is apparent." 1 *Penn.* 510, 42 *A.* 438.

The circumstance that much—no doubt the greater part—of the decisional law of this State is to be found in the opinions of our trial courts might suggest that a decision of a lower court is entitled to greater weight than would otherwise be accorded to it. Even so, we have no hesitation, as respects the maxim of *stare decisis,* in overruling the *Bice* case, since the effect of overruling it is not to import an innovation into established commercial usage but on the contrary to accomplish uniformity of interpretation and application of the standard fire insurance contract in respect of a clause therein which has received full consideration and approval from sources qualified to judge of the matter.[15]

---

[15]See the report of the Joint Legislative Committee to the New York legislature, above cited, and the discussion in *Aldrich v. Great American Ins. Co., supra,* particularly with respect to the relation between co-insurance and the equitable application of rates charged for fire insurance. 195 *App. Div.* 174, 186 *N. Y. S.* 575-576.

Insured also invokes the rule of legislative adoption of judicial interpretation of a statute. Insured points to the fact that after the date of the *Bice* decision, the valued policy statute was twice re-enacted, the first time in the revision and consolidation of the insurance laws of 1931, *Vol.* 37 *Del. Laws*, Ch. 52, Sec. 50, and the second time in 1945, *Vol.* 45 *Del. Laws*, Ch. 81, when an amendment relating to policies with blanket coverage was added. Insured accordingly argues that such legislative action has the effect of a legislative adoption of the interpretation of the statute announced in the *Bice* case.

Upon this ground the court below placed its decision on the applicability of the valued policy law to the case. The judge said:

"Upon a careful study of the language employed it seems clear to me that the statute is applicable in terms only to total losses."

Nevertheless, applying the rule of legislative adoption of judicial interpretation by re-enactment, he concluded that if *Bice* is to be overruled, it is for this Court to do so.

The rule thus applied has been recognized in this State. See *In re Real Estate of Ellis, Orphans' Court*, 22 *Del. Ch.* 439, 194 *A.* 119, which involved, however, a decision of the Court of Errors and Appeals prior to the re-enactment relied upon. The cases elsewhere are not uniform upon the question whether, in order for the rule to apply, the decision interpreting the statute must be that of the court of last resort, nor upon the question whether the judicial interpretation must be substantially contemporaneous with the re-enactment of the statute. *Cf. Sutherland on Statutory Construction*, Vol. 2, Sec. 5109. Nor are they uniform upon the question whether the rule is one of law or merely a rule of construction. We think it unnecessary to analyze the numerous decisions. We think the better view is that it is a rule which merely supplies an aid to construction, useful at times in resolving statutory ambiguities. *Helvering v. Reynolds*, 313 *U. S.* 428, 61 *S. Ct.* 971, 85 *L. Ed.* 1438, 134 *A. L. R.*

1155; *Coleman v. Coleman*, 94 *N. H.* 456, 55 *A.* 2d 471; *Stamm Elec. Co. v. Hamilton-Brown Shoe Co.*, 350 *Mo.* 1178, 171 *S. W.* 2d 580, 146 *A. L. R.* 917. No doubt the existence of legislative reports or debates, prior to re-enactment of a statute, indicating approval of prior judicial construction, might be persuasive; but nothing of that sort appears here.

■ The weight to be given such a rule depends upon the circumstances of the case. In the instant case, we think that any weight that might be attached to it is heavily overbalanced by the considerations heretofore set forth.

For all the reasons above set forth we are of opinion that the case of *Bice v. Home Ins. Co.*, *supra*, must be overruled, and that the loss in the instant case, being a partial one must be adjusted under the applicable provisions of the policies sued upon.

It follows that that portion of the judgment of the court below which denies the motions for summary judgment must be affirmed, and the remaining portion thereof which declares the rights of the parties to the cause, must be reversed. The cause is remanded to the Superior Court of New Castle County, with instructions to vacate that portion of its judgment declaring the rights of the parties and to enter in lieu thereof a declaratory judgment to the following effect:

■ 1. The provisions of Chapter 81, Vol. 45, *Laws of Delaware*, are not applicable to the defendants' claim.

2. Plaintiffs' liability to defendants under plaintiffs' policies of insurance is to be determined in accordance with the applicable provisions of the policies of insurance sued upon, including the co-insurance clause thereof.

A special form of mandate may be submitted.