[Nos. 44392, 44394. En Banc. August 4, 1977.]

THAD W. ELLIS, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*

DELORIS M. JOHNSON, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*

*Slade Gorton, Attorney General,* and *Virginia O. Binns, William T. Scharnikow,* and *Richard Roth, Assistants,* for appellant.

*Norman W. Cohen* and *Graham, Cohen, Wampold, Wesley & Munro,* for respondents.

BRACHTENBACH, J.—These consolidated cases have one common issue, *i.e.,* upon the successful appeal to superior court of an industrial insurance claim, can the court award medical witness fees, for testimony before the Board of Industrial Insurance Appeals, in excess of a statutory witness fee? We hold that the statute grants that authority. Additionally, the Johnson case has a separate issue. We affirm on all issues.

Both respondents suffered work–related injuries covered by the industrial insurance act. Each appealed to the Superior Court an order of the Board of Industrial Insurance Appeals. In the Ellis case, the board had denied the workman's claim. A judgment on a jury verdict directed the Department of Labor and Industries to accept the claim. In the Johnson case, the judgment on a jury verdict ordered payment of a permanent partial disability award of 40 percent of the maximum allowable for unspecified disabilities less a 10 percent award previously allowed by the Board.

In one case, the court awarded "a medical witness fee of $75" for the workman's medical witness. In the other case, the court awarded $300 as "reasonable fees of her medical witness."

It is the award of the medical witness fees common to both cases which the Department of Labor and Industries challenges.

On appeal of the board's decision to the Superior Court, the hearing is on the record without witnesses. RCW 51.52-.115. The board hearing, however, does involve the taking of testimony. RCW 51.52.100. Thus the award of medical

witness fees was for testimony before the board, not in Superior Court.

In the ordinary lawsuit the right to "costs" is purely statutory. *State ex rel. Lemon v. Coffin*, 52 Wn.2d 894, 327 P.2d 741, 332 P.2d 1096 (1958). By statutory definition "costs" include witness fees. RCW 4.84.090.

The statute in point is RCW 51.52.130 which authorizes the court to fix, under certain circumstances, a reasonable attorneys' fee for services before the department, the board and the court. Pertinent here is the additional language which provides "the fees of medical and other witnesses and the costs shall be payable out of the administrative fund of the department." The words "and the fees of medical and other witnesses and the costs shall be payable" have been part of the workmen's compensation act since its first enactment. Laws of 1911, ch. 74, § 20. The procedure involving appeals has changed substantially since this statute was enacted. Under the 1911 act the superior court trial was live, not limited to the record as it is now. Another provision of the original act, section 25, allowed the court to appoint physicians to examine the workmen, who would then report to the court, and whose fee was to be fixed by the court with a maximum set by statute.

The Department of Labor and Industries reasons that the authority in section 20, now RCW 51.52.130, to pay medical witness fees was necessary because of the right of the court to appoint medical witnesses and set their limited fees pursuant to section 25. Then it points out that section 25 was repealed by Laws of 1915, ch. 188, § 10. It thus concludes that the authority to fix medical witness fees was abrogated, leaving only the statutory witness fee allowance set by RCW 2.40.010, $4 plus mileage.

The flaw in this analysis is that the language of section 20, RCW 51.52.130, regarding payment of fees of medical and other witnesses was left intact. While the recited legislative history may well explain why the language of section 20 was inserted originally, the repeal of the interconnected

section 25 does not erase the still extant provisions of section 20 which must mean something. The puzzle is what it means in today's statutory scheme.

The first possibility urged is that the statutory witness fee provided in RCW 2.40.010 controls. If it does, the puzzle is solved. However that statute is not controlling for two reasons. First, it is limited by its terms to a witness' attendance *in court.* The fees allowed here were not for attendance in court, but rather before the board. Second, if that were the legislative intent, the words "the fees of medical and other witnesses" would be totally surplus because the statute also authorizes payments of costs which is defined to include all witness fees. RCW 4.84.090.

The problem is confounded by our decision in *Nelson v. Industrial Ins. Dep't,* 104 Wash. 204, 176 P. 15 (1918), which squarely held that the repeal of section 25 removed any discretionary power of the court to set medical witness fees. The conclusion of that case is clear; the reasoning is not. The court failed to explain what meaning remained in the language of section 20 after repeal of section 25. We now reexamine the *Nelson* holding.

■ Preliminarily, however, we must meet the department's contention that reenactment on several occasions of the statute after *Nelson* is a legislative approval and adoption of the *Nelson* holding. That is an accepted rule of statutory interpretation. *Yakima Valley Bank & Trust Co. v. Yakima County,* 149 Wash. 552, 271 P. 820 (1928). However, that rule of statutory interpretation is not one of absolute binding force. It is merely an aid or guide which the court may take into account in carrying out its prime duty which is to ascertain the intent of the legislature. It "does not debar the courts from re–examining their own previously accepted doctrines or from modifying or overruling their former decisions." *In re Estate of Elliott,* 22 Wn.2d 334, 359–60, 156 P.2d 427, 157 A.L.R. 1335 (1945). To the same effect, *see American Ins. Co. v. Iaconi,* 47 Del. 167, 89 A.2d 141, 36 A.L.R.2d 604 (1952); *Reynolds v. Continental Mortgage Co.,* 85 Idaho 172, 377 P.2d 134 (1962);

*Coleman v. Coleman,* 94 N.H. 456, 55 A.2d 471 (1947); *Stormo v. Dell Rapids,* 75 S.D. 582, 70 N.W.2d 831, 51 A.L.R.2d 1123 (1955).

The lack of analysis in *Nelson,* its failure to attribute any meaning to the words of section 20, and the fact that the legislature has changed the function of the superior court since *Nelson,* are factors that compel us to reexamine the *Nelson* holding. Bearing in mind that the act is to be liberally construed, RCW 51.12.010, we conclude that the *Nelson* result was wrong.

▇ The words "the fees of medical and other witnesses and the costs shall be payable" can only mean that the court has authority to fix the fees of medical witnesses. If the award were intended to be limited to statutory witness fees, the words "the fees of medical and other witnesses" would be meaningless because, as pointed out above, "costs" are allowed also. By statutory definition that word "costs" includes statutory witness fees. Therefore the additional words do have substance and meaning only if the court has authority and discretion to award witness fees beyond the statutory witness fees. We so hold.

We now turn to the separate issue in the Johnson case.

Cross–appellant Johnson claims error in the form of the interrogatories submitted to the jury. The court instructed the jury that its verdict would be in the form of answers to three interrogatories which were in the form contained in the footnote.[1] The alleged error is that these interrogatories required the jury to choose between (1) a permanent total disability award and (2) no more than a 55 percent permanent partial disability. Cross–appellant contends that the evidence justified a verdict greater than 55 percent but less than total permanent partial disability. She is wrong.

---

[1] No. 19

"This being a civil case it requires only five of you to agree upon a verdict. Your verdict in this case will be in the form of answers to the following interrogatories:

■ First, we note that the record contains no objection or exception to the form of the verdict interrogatories nor was any alternate form proposed. Second, even if we go to the merits, there is no error.

■ There are two rules which are applicable to the assigned error. First, any increase of the award, above that given by the board, must be established by medical testimony. *Page v. Department of Labor & Indus.*, 52 Wn.2d 706, 328 P.2d 663 (1958). Second, though the jury may arrive at a verdict that lies between the opinions of the expert witnesses, it cannot make an award in excess of the maximum amount of bodily function loss testified to by the experts. *See Page v. Department of Labor & Indus., supra.*

In the present case, the medical testimony ranged from no physical or psychiatric disability to permanent partial disability of 50 percent of the maximum allowable for unspecified injuries plus an additional 5 percent for psychi-

---

INTERROGATORY No. I:

"Was the Board of Industrial Insurance Appeals correct in determining that as of August 4, 1972, Mrs. Johnson's permanent disability proximately resulting from her June 7, 1971 industrial injury did not exceed 10% of the maximum allowed for unspecified injuries and that on or about August 4, 1972 Mrs. Johnson was capable of obtaining and performing gainful employment on a reasonably continuous basis?

ANSWER: _____(Yes or No)
If your answer to Interrogatory No. I is "yes" you will not answer Interrogatory No. II.

INTERROGATORY No. II:

"On or about August 4, 1972, and as a proximate result of her June 1971 industrial injury was Mrs. Johnson capable of obtaining and performing gainful employment on a reasonably continuous basis?

ANSWER: _____(Yes or No)
If your answer to Interrogatory No. II is "no" you will not answer Interrogatory No. III. If your answer to Interrogatory No. II is "yes" you will answer Interrogatory No. III.

INTERROGATORY No. III:

"Expressed in percentage terms what was Mrs. Johnson's permanent partial disability proximately resulting from her industrial injury of June, 1971 as said disability existed on or about August 4, 1972?

ANSWER: _____Not less than 10% nor more than 55% maximum allowable for unspecified disabilities."

atric disability.[2] The doctor who testified to the 50 percent disability also testified that this disability prevented the claimant from carrying on any gainful employment on a reasonably continuous basis. In other words, permanent total disability.

The trial court combined the 50 percent organic disability with the 5 percent psychiatric disability in allowing the jury to consider a maximum of 55 percent permanent partial disability. The jury was also allowed to consider a permanent total disability award. The jury rejected the permanent total verdict and awarded an additional permanent partial disability of 30 percent, for a total of 40 percent of the maximum for unspecified injuries.

■ Claimant argues that the testimony that there was permanent total disability would sustain a verdict for permanent partial disability greater than 55 percent, therefore it was error for the court to limit the jury's verdict. Stated another way, claimant argues that testimony of permanent total disability opens for jury consideration the spectrum of 0 percent to 100 percent of the maximum allowable for unspecified permanent partial disability. This was the theory of Justice Foster in his dissenting opinion in *Page*, but it is not the law of this state.

The error in such reasoning stems from the fact the concepts of permanent total and permanent partial disability are not different levels on the same continuum, but are two separate concepts. *Compare* RCW 51.08.160 *and Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942), *with* RCW 51.08.150 *and Franks v. Department of Labor and Indus.*, 35 Wn.2d 763, 215 P.2d 416

---

[2]The July 1, 1971, amendment to RCW 51.32.080(2) provides a different rating system, but these concepts are not relevant to this case. Cross–appellant's injury at issue occurred in June 1971 and comes within the provisions enacted in Laws of 1965, ch. 165, § 1. Benefit amounts and the method by which they are determined are governed by the law in effect at the date of injury. *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 380 P.2d 730 (1963). Permanent partial disability ratings expressed in terms of a percentage of the unspecified were a commonly accepted method of rating under the pre–July 1971 statutory provisions. *See, e.g., Page v. Department of Labor & Indus.*, 52 Wn.2d 706, 328 P.2d 663 (1958).

(1950). For a general discussion of the differences between the two concepts, *see Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 499 P.2d 255 (1972).

Claimant cites several cases for her argument that testimony by a doctor of permanent total disability is in itself evidence of some degree of permanent partial disability. And, that the jury may then award a percentage of permanent partial disability greater than that testified to by any medical expert.

But these cases do not establish the rule claimant now seeks. In *Dowell v. Department of Labor & Indus.*, 51 Wn.2d 428, 319 P.2d 843 (1957), the claimant suffered a back injury and was awarded 20 percent permanent partial disability by the Board of Industrial Appeals. The claimant appealed to the superior court and the jury returned a verdict of 80 percent of the maximum for unspecified permanent partial disability.

There, two doctors testified that there was a disability of 20 percent of the maximum allowed for unspecified injuries. A third doctor testified that the claimant was "totally disabled" in the "ability to work" or permanent total disability sense. And this doctor also testified to various objective physical symptoms of the injury.

We sustained the verdict of 80 percent permanent partial disability not because of the testimony that the claimant was "totally disabled" but because of the objective physical symptoms described by the doctor. We held that this latter testimony was medical testimony establishing "a very high degree of permanent partial disability, even though it was not expressed in terms of percentages." *Dowell v. Department of Labor & Indus., supra* at 433.

In *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 401 P.2d 982 (1965), we did not discuss the specific testimony presented, but simply noted that the evidence was sufficient to sustain an award from zero to 100 percent of unspecified permanent partial disability and an award of permanent total disability. Thus, we held it was error, prejudicial to the department, for the trial court to refuse to

submit any permanent partial disability interrogatory to the jury.

Thus, in both cases there was medical testimony of the extent of loss of bodily function sufficient to sustain the jury verdict.

The final case cited by claimant is *Thompson v. Department of Labor & Indus.*, 2 Wn. App. 785, 470 P.2d 224 (1970). There, one doctor testified that there was no injury. The second testified that the claimant was "totally disabled in terms of laboring work and for all practical purposes unemployable.'" *Thompson v. Department of Labor & Indus., supra* at 786.

The Court of Appeals held this testimony to be sufficient to sustain a jury verdict of 85 percent permanent partial disability. We disagree. The only testimony concerning permanent partial disability was that there was no loss of bodily function. Thus, it was error to submit the issue of permanent partial disability to the jury. Testimony concerning inability to work is not in itself evidence of loss of bodily function.

In the present case, the interrogatories to the jury were consistent with the testimony. The testimony was sufficient to sustain a finding of permanent total disability. And it would have supported a permanent partial disability award up to 55 percent. But, had the jury returned a verdict of permanent partial disability greater than 55 percent, it would have been in excess of that testified to by any expert witness and the trial court would have been obligated to overturn the verdict. *Page v. Department of Labor & Indus., supra.* There was no error.

Judgments are affirmed.

ROSELLINI, HAMILTON, UTTER, and DOLLIVER, JJ., concur.

HICKS, J. (dissenting)—On the issue of medical witness fees, I dissent.

It may well be that the time has come when a claimant's medical witness fees should be paid by the state fund

administered by the Department of Labor and Industries. At this point in the history of this legislation, however, this court should not make that determination.

The day is past when it is necessary to pretend that courts do not make law. On occasion, there is no other way to solve a problem that must have a solution. This is not such a case.

As the argument was heard in this case and the opinion prepared, the legislature sat in session not 300 yards away. There was no necessity for this court to legislate in this instance.

As pointed out in the majority opinion, *Nelson v. Industrial Ins. Dep't,* 104 Wash. 204, 176 P. 15 (1918), decided almost 60 years ago, held that the superior court had no discretionary power in fixing medical witness fees. Since that time the legislature has met every 2 years, or oftener, and it has amended the act on many occasions, including the specific section herein concerned. Matters concerning industrial insurance have frequently received the attention of the legislature, yet the *Nelson* construction has never been changed.

In writing for the Court of Appeals in *Winterroth v. Meats, Inc.,* 10 Wn. App. 7, 13, 516 P.2d 522 (1973), Judge Horowitz considered an identical problem of a different section of the statute. He had this to say:

It must be presumed that the legislature has been aware of the rule announced in 1922 and then reaffirmed in later decisions. It would have been a simple matter for the legislature to have changed the rule and adopted a broader exception so as to permit the action here if the legislature wished such change to be effected. This is all the more true because the legislature during the last 50 years has amended the industrial insurance act in a number of respects but has never changed the critical language contained in RCW 51.24.020. Instead, the language has been retained in four reenactments during the years. The reenactment of the statute without change after the Supreme Court of this state has construed the statute is in effect a legislative approval of the statute as

construed. *McKinney v. McDonald's Estate,* 71 Wn.2d 262, 427 P.2d 974 (1967).

That the legislature has, to date, consciously acquiesced in *Nelson* is evidenced by the fact that on at least one occasion it declined to enact a provision designed to pay an extraordinary medical witness fee. (Senate Bill No. 551, 1967.) After 60 years, I would consider a policy settled and if it is to be changed it is particularly within the province of the legislature to do the changing. For this court to now reconstrue the statute, as it has done, is unwarranted judicial legislation with which I cannot concur. I dissent.

WRIGHT, C.J., and STAFFORD and HOROWITZ, JJ., concur with HICKS, J.